HYMAN DUBY *vs.* JOEL BARON & others.[1]

Plymouth.  September 15, 1975. — January 30, 1976.

Present: HENNESSEY, C.J., QUIRICO, KAPLAN, & WILKINS, JJ.

*Physician*, Suspension of hospital privileges.  *Corporation*, Charitable.
*Constitutional Law*, Due process of law.

An executive committee of the medical staff of a hospital had authori-
ty to suspend a doctor from hospital privileges temporarily where
the hospital's board of directors had delegated authority for gov-
erning matters of staff discipline to the medical staff, including the
authority to suspend temporarily from the privileges of the hos-
pital, and the by-laws of the medical staff, which were approved
by the board of directors, provided for an executive committee "to
act for the staff as a whole" [619-621]; the board's delegation of
such authority was reasonable and not void as matter of law [622].
Where serious questions arose as to the propriety of a doctor's surgical
and medical treatment of his patients, temporary suspension of his
hospital privileges by the executive committee of the medical staff
of a hospital, prior to and pending a prompt hearing with full
procedural safeguards, did not constitute a denial of due process of
law.  [622-625]

BILL IN EQUITY filed in the Superior Court on Au-
gust 13, 1973.  The suit was heard by *Dimond*, J.

After review was sought in the Appeals Court, the
Supreme Judicial Court, on its own initiative ordered
direct appellate review.

*James B. Dolan* for the plaintiff.
*Michael J. Lack* for the defendants.

---

[1] The other named defendants are Richard Ticknor, Theodore Wal-
tuch, Ernest Higgins, and David Kelley, members of the executive
committee of the medical staff of The Jordan Hospital, and Walter
Strauch, administrator of the hospital.

QUIRICO, J. The plaintiff, a physician and surgeon, brought this action in the Superior Court for declaratory and injunctive relief following the temporary suspension of his hospital staff privileges by the executive committee of the medical staff of The Jordan Hospital (hospital) in Plymouth. The committee's action resulted from certain allegedly improper surgical and medical procedures performed by the plaintiff on one of his patients at the hospital. The case is before us on the plaintiff's appeal from the judgment upholding the suspension.[2] We affirm.

We summarize the pertinent facts found by the judge of the Superior Court. The plaintiff, a physician specializing in general surgery and obstetrics, has practiced his profession in Plymouth since he was first licensed therefor in 1931. He has been a member of the active medical staff of the hospital since 1933 and has held various positions there incident to his staff membership.

The hospital is licensed and is organized as a charitable corporation under the provisions of G. L. c. 180. It is administered and operated under three sets of by-laws — one set governing the proceedings of the corporation itself, a second set governing its board of directors, and a third set governing its medical staff.

In accordance with the applicable by-laws, the plaintiff's membership on the medical staff has consisted of a series of successive one-year appointments made by the hospital's board of directors. His most recent appointment expired on September 30, 1973.[3]

---

[2] The affirmance was by a final decree entered February 15, 1974, before the new Massachusetts Rules of Civil Procedure took effect on July 1, 1974.

[3] The failure of the board of directors to reappoint the plaintiff to staff membership after September 30, 1973, is contested by the plaintiff in a related case, *Duby* v. *Jordan Hosp.*, *post* 626 (1976), decided this day.

On July 26, 1973, the plaintiff performed a therapeutic abortion on one of his patients at the hospital. Following the operation, the patient's condition deteriorated, and, after repeated telephone calls to the plaintiff from members of the nursing staff regarding the patient's condition and a severe warning by the chief of obstetrics at the hospital as to possible complications, the plaintiff performed a second operation on the patient on July 27, 1973. He made no notation of either operation in the hospital records. Thereafter, questions arose as to the propriety of the plaintiff's surgical and medical procedures, and on the afternoon of July 27, 1973, he was instructed by Dr. Clifford Agnew, the chief of surgical services at the hospital, to perform no further surgery there. Dr. Agnew had been apprised of the circumstances of the plaintiff's treatment of the patient in question. He was aware of the fact that the plaintiff's past association with the hospital had been marked by similar incidents of alleged improper treatment of patients.[4] He also knew that the plaintiff had scheduled another abortion to be performed on July 31, 1973.

On July 30, 1973, Dr. Agnew sent letters to the executive committee of the medical staff, and to the credentials committee, reporting his action in instructing the plaintiff not to perform further surgery at the hospital and recommending to the two committees that the plaintiff "be deprived of surgical privileges at The Jordan Hospital." That same day, the executive committee met and heard an oral report on the matter by Dr. Agnew, who re-

---

[4] In 1969, the plaintiff's surgical privileges at the hospital were suspended temporarily. Subsequently, these privileges were restored subject to certain limitations on their exercise. In 1971, the plaintiff was formally expelled from membership in the American College of Surgeons following a determination that he had handled improperly five surgical cases at the hospital. The plaintiff unsuccessfully challenged this expulsion in the Federal courts on due process grounds. See *Duby* v. *American College of Surgeons,* 468 F.2d 364 (7th Cir. 1972).

counted in detail the allegedly improper treatment rendered by the plaintiff. The committee then made a "Preliminary Report," stating in part: "It is the conclusion of the Committee that reasonable cause exists as to whether [the plaintiff's] performance as a staff member in this case (a) meets acceptable professional standards of medical care (By-Laws, Article II) and (b) insures the best possible care to patients admitted to the Hospital (By-Laws, Article II)." The minutes of that meeting indicate that the executive committee (1) agreed that the preliminary report "should be referred to the Credentials Committee under the procedures of . . . [applicable by-laws] to determine appropriate action, if any, which should be taken relating to [the plaintiff]," and (2) suspended the plaintiff temporarily, effective immediately. The vote of suspension is reproduced in the margin.[5]

Immediately after that meeting of the executive committee the president of the medical staff notified the plaintiff by telephone of his temporary suspension. The staff president confirmed the notification by a letter dated July 30, 1973, and received by the plaintiff on August 3, 1973, which stated in part: "The Executive Committee has voted that you be temporarily suspended from all staff privileges at The Jordan Hospital pending the outcome of the full procedures under By-Laws, Article VI, section 2-b and that this temporary suspension shall become effective immediately." Enclosed therewith were copies of the minutes of the meeting, the prelimi-

---

[5] The minutes state further that "[i]t is the unanimous opinion of the Executive Committee that the Preliminary Report raises serious questions of patient care at the hospital; that the best interests of the hospital and its patients require that immediate action be taken; that it is the duty and responsibility of the Executive Committee to take such action. *Accordingly, acting for the Staff as a whole, it is ordered that [the plaintiff] be temporarily suspended from all staff privileges at the hospital pending the outcome of the full procedures under [the] By-Laws, . . . and that this temporary suspension shall become effective immediately*" (emphasis supplied).

nary report made by the executive committee, and a letter to the chairman of the credentials committee.

On August 1, 1973, the plaintiff commenced the present action by the filing of his bill in equity in the Superior Court. On August 6, 1973, the president of the hospital wrote the plaintiff informing him of the hospital executive committee's awareness of the action taken by the medical staff executive committee on July 30, 1973, and confirming that such action was in effect. The letter further stated that: "The hearing procedures, as outlined in The Jordan Hospital Medical Staff Bylaws are to be followed, and the Hospital Executive Committee will take further action when it is in receipt of the Medical Staff's report and recommendations."

On August 10, 1973, the chairman of the credentials committee wrote the plaintiff advising him of the nature of the evidence which that committee would consider at a hearing to be held on August 16, 1973, relative to the suspension of his hospital staff privileges. A hearing was held on that date, and on September 20, 1973, the credentials committee made its written report on the matter to the medical staff. The plaintiff's appointment to the staff expired on September 30, 1973. On October 1, 1973, the medical staff voted not to reappoint him, and on October 18, 1973, the executive committee of the board of directors of the hospital adopted a similar vote.

After a trial in the Superior Court, the judge ordered the entry of a final decree (a) declaring that the action of four of the named defendants in temporarily suspending the plaintiff from staff privileges "was lawful and violated none of his rights," and (b) dismissing the substitute bill of complaint as to the two other defendants "for lack of any controversy between the plaintiff and either of them." The plaintiff seasonably appealed from that final decree.

The evidence at the trial of the case was ordered reported under G. L. c. 214, § 24. The plaintiff requested a report of material facts under G. L. c. 214,

§ 23, whereupon the judge adopted as his report the findings which he previously had made voluntarily as a part of his decision of the case. (Sections 23 and 24 have been since repealed by St. 1973, c. 1114, § 62.) Since the record of the evidence, consisting largely of testimony, and the exhibits are before us, "it is our duty to examine . . . [them] and decide the issues according to our judgment as to the facts and the law, giving due weight to the findings of the judge which will not be reversed unless plainly wrong." *LeBlanc* v. *Molloy*, 335 Mass. 636, 637 (1957). *Save-Mor Supermarkets, Inc.* v. *Skelly Detective Serv., Inc.*, 359 Mass. 221, 223-234 (1971), and cases cited. We have examined the evidence and we conclude that the judge's findings of subsidiary facts are supported by the evidence and are in no instance plainly wrong. The subsidiary findings support the judge's general conclusions based thereon.

1. The plaintiff contends that the defendants' action in temporarily suspending his hospital privileges constituted a tortious interference with his medical practice. He argues that the judge erred in finding and ruling that such action was undertaken by the defendants "within the scope of each [of their] duties as a member of the [medical staff executive] committee . . . [and] in the reasonable belief that based on all of the facts the action on his part was warranted. See G. L. c. 231, § 85N, inserted by St. 1972, c. 242."[6]

In support of his contention, the plaintiff makes two arguments. He first argues that the by-laws did not give the executive committee the authority to suspend him

---

[6] Section 85N provides in part as follows: "No member of a professional society or of a duly appointed committee thereof or a duly appointed member of a committee of a medical staff of a licensed hospital shall be liable in a suit for damages as a result of his acts, omissions or proceedings undertaken or performed within the scope of his duties as such committee member, provided that he acts in good faith and in the reasonable belief that based on all of the facts the action or inaction on his part was warranted."

temporarily, and that therefore G. L. c. 231, § 85N, did
not apply. We disagree.

The record demonstrates that the judge properly con-
cluded that the committee did have such authority. We
summarize the subsidiary findings on which he based
his conclusion. Article 2 of the hospital by-laws vests the
entire management of the business and affairs of the
hospital in its board of directors "under such rules and
regulations as they from time to time adopt, and through
such committees, servants, and agents as they may ap-
point. The rules and regulations adopted by the board
of directors expressly provide that "[t]he professional
work at the Hospital shall be governed by the [Medical]
Staff bylaws," and that "[m]atters of staff discipline shall
rest in the hands of the Regular Staff, *including the au-
thority to temporarily suspend from the privileges of
the Hospital*" (emphasis supplied). The by-laws of the
medical staff provide for an executive committee of the
staff and define the committee's duties to include the
duty "to act for the staff as a whole." Moreover, the
medical staff by-laws provided that they would take
effect when approved by the board of directors, and that
"[u]pon such approval they shall be equally binding on
the governing board [board of directors] and the medical
staff"; the by-laws were approved by the board of di-
rectors, and were in full force and effect at all times
material to this case.

The plaintiff argues in the alternative that any by-law
by which the board of directors attempts to delegate to
the defendants the authority to suspend temporarily a
doctor's hospital privileges is void as matter of law. We
disagree. The plaintiff bases this argument on the state-
ment in *Boston* v. *Curley*, 276 Mass. 549, 562 (1931),
that each member of a charitable corporation "is charged
with the obligations of a trustee . . . [and that] [i]n
general the duties of a trustee cannot be delegated . . .
[but] are personal." We do not accept that statement as
a holding that the directors are without power to delegate

responsibility when reasonably necessary. The exigencies of the everyday administration of a hospital often necessitate summary action in order to maintain the required quality of patient care. Prompt action in temporarily suspending a physician's hospital privileges where the propriety of his treatment of patients has been called into question may be warranted and indeed in many cases essential in order to ensure that patients receive the best possible care which a hospital is able to provide. *Citta* v. *Delaware Valley Hosp.*, 313 F. Supp. 301, 310 (E.D. Pa. 1970). It is entirely reasonable for the board of directors to grant the authority to suspend professional staff members temporarily, in appropriate circumstances, to a committee of professionals who are capable of making informed and knowledgeable decisions as to the professional competence of a staff member without undue delay. That such summary action must be taken promptly to be effective is underscored in the present case by the fact that the plaintiff was planning to perform another operation similar to the very operation which brought about his suspension now in issue.

The board of directors of the hospital have in no way delegated their responsibility to determine ultimately whether to dismiss a member of the medical staff. Under the staff by-laws, "[d]ismissal of a staff member is only accomplished by a vote of the Board of Directors after . . . [the procedure set forth therein relative to removal from the staff is followed]."[7]

We thus conclude that the action of the executive committee of the staff was authorized under the applicable by-laws pursuant to a lawful delegation of authority to it by the board of directors, and that the defendants' action was within the scope of their duties.

---

[7] The full text of the procedure for dismissal or removal from the staff under art. VI, § 2, par. b, of the medical staff by-laws is reproduced, *infra* at note 8.

The judge's general finding that each defendant, in the language of G. L. c. 231, § 85N, had acted "in good faith and in the reasonable belief that based on all of the facts the action on his part was warranted," is amply supported by the subsidiary findings contained in his report of material facts. No useful purpose would be served by repeating those findings.

2. The plaintiff next contends that the defendants' temporary suspension of his hospital privileges violated the due process clause of the Fourteenth Amendment to the United States Constitution, and concepts of "natural justice," which are "long recognized principles of Massachusetts equity jurisprudence." This contention is without merit.

The plaintiff claims the Fourteenth Amendment to be applicable to the action of the defendants on the basis of the hospital's receipt of Federal funds under the Hill-Burton Act, 42 U.S.C. § 291 et seq. (1970), to remodel and enlarge its facilities. Differing views exist as to whether the mere receipt of such funds causes the actions of a hospital or its officers or agents to constitute or be the equivalent of "state" or "federal" action within the purview of the Fourteenth Amendment. Compare *Sams* v. *Ohio Valley Gen. Hosp. Ass'n,* 413 F.2d 826, 828 (4th Cir. 1969); *Simkins* v. *Moses H. Cone Memorial Hosp.,* 323 F.2d 959, 967 (4th Cir. 1963), cert. denied, 376 U.S. 938 (1964); *Citta* v. *Delaware Valley Hosp.,* 313 F. Supp. 301, 307 (E.D. Pa. 1970); with *Ascherman* v. *Presbyterian Hosp. of Pac. Medical Center, Inc.,* 507 F.2d 1103, 1104-1106 (9th Cir. 1974); *Ward* v. *St. Anthony Hosp.* 476 F.2d 671, 674-675 (10th Cir. 1973); *Ozlu* v. *Lock Haven Hosp.* 369 F. Supp. 285, 287 (M.D. Pa. 1974), aff'd 511 F.2d 1395 (3d Cir. 1975); *Mulvihill* v. *Julia L. Butterfield Memorial Hosp.,* 329 F. Supp. 1020, 1022-1025 (S.D.N.Y. 1971). We need not and do not, however, reach or answer that question. We hold only that assuming the due process clause of the Fourteenth Amendment to be applicable, the temporary

suspension of the plaintiff's hospital privileges by the defendants satisfied its requirements.

The plaintiff argues specifically that his right to due process was violated in that he was not given notice or granted a hearing prior to the temporary suspension of his hospital privileges. He does not argue that notice and a hearing prior to a temporary suspension of privilege or to other summary interim action is constitutionally required in all cases. He apparently recognizes that it has long been held that, consistent with due process, "where harm to the public is threatened, and the private interest infringed is reasonably deemed to be of less importance, an official body can take summary action pending a later hearing." *R.A. Holman & Co.* v. *Securities & Exch. Comm'n*, 299 F.2d 127, 131-132 (D.C. Cir.), and cases cited, cert. denied, 370 U.S. 911 (1962). Rather, he urges that such procedural safeguards should have been afforded him before the defendants acted in the present case in view of the serious consequences which the suspension had on his medical practice. We disagree.

Where "questions concerning [a physician's] operative procedures touch on the quality of the care his and the hospital's patients receive at his hands, . . . a hospital has ample justification for acting *before* extending a hearing to the physician." *Citta* v. *Delaware Valley Hosp.*, 313 F. Supp. 301, 309 (E.D. Pa. 1970). The facts as found by the judge demonstrate that this was a case involving serious questions as to the propriety of the plaintiff's surgical and medical treatment of one of his patients and one involving potential danger to another of his patients as well. We hold, therefore, that, in so far as due process applies, the defendants were justified in temporarily suspending the plaintiff's hospital privileges prior to and pending a hearing and ultimate determination of the matter. The governing by-laws of the medical staff and of the board of directors of the hospital provide an extensive procedure for prompt hearing and review of the temporary suspension. The procedure gives ample

protection to a staff member against whom a complaint or charge has been brought.[8]   The findings of the judge reveal that the defendants and other hospital officials were acutely aware of this procedure, that they followed it, and that they provided the plaintiff with adequate notice of the course of action as each step was taken. There was no denial of due process in these circumstances.

For the reasons above set forth regarding the plaintiff's due process claim, we also conclude that there was no violation of "principles of natural justice," as argued by the plaintiff, citing *Becker* v. *Calnan*, 313 Mass. 625, 628

---

[8] Article VI, § 2, par. b, of the by-laws of the medical staff at the hospital provides in pertinent part as follows:

"Any infraction of the By-Laws, Rules and Regulations of the Medical Staff may be considered as cause for removal from the staff under the following procedure:

"1. The Executive Committee of the Medical Staff shall present the problem of the individual staff member in question to the Credentials Committee.   The particular staff member shall be notified via registered mail by the Executive Committee that his performance as a staff member has been referred to the Credentials Committee.

"2. The Credentials Committee shall then grant a hearing to the member in question and make its recommendations to the Executive Committee of the staff.   The Credentials Committee hearing shall be with the individual physician or with his designated representative, and shall be no sooner than fourteen (14) days after receipt of notification by the physician in question.

"3. The Executive Committee shall consider the recommendations of the Credentials Committee, and shall forward the report, if dismissal is recommended, to the Medical Staff.

"4. The Medical Staff will consider the recommendations of the Executive Committee at a regular or special staff meeting.   If the Active Medical Staff recommends dismissal by a two-thirds vote, then this recommendation will be forwarded to the Joint Conference Committee, consisting of the Executive Committee of the Board of Directors and the Executive Committee of the Medical Staff.   The Joint Conference Committee shall grant a hearing to the individual staff member in question, or to his designated representative, and make its recommendations, if dismissal is voted, to the Board of Directors of the hospital.

"5. Dismissal of a staff member is only accomplished by a vote of the Board of Directors after all the aforementioned steps are taken."

(1943). In so concluding, we in no way attempt to define or limit such principles, but rather confine our holding to the facts of the present case in which the plaintiff seems to be equating fundamental requirements of constitutional due process with "the principles of natural justice" as such words are used in the *Becker* case.

3. The plaintiff also contends that the denial of his motion to add the hospital as a party defendant was error. In light of the conclusion which we reach as to the plaintiff's substantive contentions, we need not resolve this issue. Since the plaintiff does not represent that he would allege any claims or present any evidence against the hospital additional to or materially different from what is before us against the present defendants, the denial of his motion in no way prejudiced him, and its allowance at this stage would clearly serve no purpose.

4. Lastly, the plaintiff argues that if he was obligated to exhaust remedies within the hospital, he was excused from this obligation because the appellate tribunal at the hospital prejudged the issue involved in his case. While it appears that the plaintiff may well have instituted judicial proceedings prematurely after a temporary suspension, by rendering a decision on the substantive merits of the plaintiff's claims we have chosen to disregard this possible procedural defect. Since the plaintiff has been afforded a decision on the merits of his claims, further resolution of this procedural issue is obviously unnecessary.

5. The judgment entered in the Superior Court is affirmed.

*So ordered.*