ALAN S. BELLO & others vs. SOUTH SHORE HOSPITAL
(and a companion case[1]).

Norfolk. October 8, 1981. — December 22, 1981.

Present: HENNESSEY, C.J., WILKINS, LIACOS, NOLAN, & LYNCH, JJ.

*Constitutional Law*, State action, Hospital. *Physician*, Hospital priv-
ileges. *Declaratory Judgment*. *Practice, Civil*, Declaratory relief,
Parties. *Hospital*.

Where the State had no control over the staffing decisions of a private hos-
pital, the hospital's denial of staff privileges to four physicians was not
subject to judicial review as State action under the Fourteenth Amend-
ment, even though the hospital was licensed and regulated by the
State, was tax exempt, and received State and Federal funds.
[773-777]

The staffing decisions of a private hospital are not reviewable under a
common law theory of judicial review apart from any finding of State
action. [777]

Physicians denied staff privileges by a private hospital did not have stand-
ing to obtain a declaration under G. L. c. 231 determining the rights
of the physicians with respect to the hospital's by-laws. [777-780]

Plaintiffs who had never been patients of a private hospital did not have
standing to bring an action against the hospital for violation of G. L.
c. 111, § 70E, in denying staff privileges to certain physicians.
[780-781]

Under G. L. c. 111, § 70E, providing that a patient has "the right to
freedom of choice in his selection of a facility, or a physician or health
service mode," a patient did not have the right to be treated at a par-
ticular hospital by a physician who did not have staff privileges at that
hospital. [781-783]

CIVIL ACTIONS commenced in the Superior Court Depart-
ment on July 25, 1978, and October 31, 1979, respectively.

The cases were heard by *Meyer*, J.

The Supreme Judicial Court granted a request for direct
appellate review.

[1] Diane Connell & others *vs.* South Shore Hospital.

*Philip M. Cronin (Peter J. McCue* with him) for the plaintiffs.

*Ronald F. Kehoe (Jeffrey W. Lawrence* with him) for the defendant.

NOLAN, J. Four physicians filed a complaint in the Superior Court after the defendant, South Shore Hospital (hospital), denied their applications for staff privileges. They sought a declaratory judgment as to the propriety of the denial of staff privileges, alleging that the hospital's actions were arbitrary, unreasonable, discriminatory, and inconsistent with its own by-laws. They also sought injunctive relief and an order directing the hospital to grant them staff privileges. Subsequently, a second complaint was filed, listing as plaintiffs the same four physicians and three of their patients. The patients sought injunctive relief and a declaration that under G. L. c. 111, § 70E (the Patients' Rights Act), they have a right to be hospitalized at South Shore Hospital and to be attended by one of the physician plaintiffs (physicians).[2] The cases were consolidated for trial.

The trial judge ruled that the hospital's involvement with the State was sufficient to constitute State action. Accordingly, the judge ruled that the court had jurisdiction to review the hospital's denial of staff privileges to the physicians. After making such review, the judge ruled that the hospital's action in denying staff privileges to the physicians was not arbitrary, capricious, or unreasonable, and that there was no denial of the physicians' rights of due process as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution. The judge further ruled that statements signed by the physicians in connection with

---

[2] In the second complaint the physicians requested relief under G. L. c. 111, § 70E, and under G. L. c. 93A, § 2. The judge ruled that G. L. c. 111, § 70E, does not confer rights upon physicians who are not themselves recipients of health services. The judge also ruled that the hospital's actions did not amount to an unfair act or practice under G. L. c. 93A. Since the physicians have not argued these issues on appeal, they are deemed waived. Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 919 (1975).

their applications for staff privileges did not constitute a waiver of their rights to judicial review of the hospital's actions. In regard to the second complaint, the judge ruled that the patients had no claim against the hospital under G. L. c. 111, § 70E. In both cases, the judge entered judgments for the hospital and ordered that the actions be dismissed on the merits. All plaintiffs appealed and the hospital cross appealed. We allowed the plaintiffs' application for direct appellate review. We affirm the judgments in both cases, although for different reasons from those stated by the judge.

We summarize the pertinent facts as found by the judge. Other relevant facts will be discussed in later portions of this opinion. Four of the plaintiffs, Alan S. Bello, Ibrahim F. Fanous, Bernard Spiegel and Philip G. Sullivan, are licensed physicians specializing in obstetrics and gynecology. They operate a joint practice with offices in Quincy and Marshfield and have staff privileges at Quincy City Hospital. The defendant, South Shore Hospital, is a nonprofit, charitable institution, incorporated under G. L. c. 180. It is located in South Weymouth. The hospital is licensed by the Massachusetts Department of Public Health under G. L. c. 111, § 51, and is accredited by the joint commission on accreditation of hospitals as an acute-care general hospital. It is generally supervised by the Attorney General under G. L. c. 12, §§ 8-8M.

On June 2, 1977, the physicians applied for staff privileges at the hospital. Their applications were considered by the hospital's credentials committee, which approved their qualifications. The obstetrics and gynecology department first accepted and later rejected their applications. The hospital's active medical staff rejected the applications. The physicians appealed the decision of the medical staff to the medical staff review committee. At the review hearing which followed, the doctors were represented by counsel and were permitted to testify and to cross-examine witnesses. The review committee voted unanimously to sustain the decision of the medical staff and denied staff privileges

to the physicians. The physicians appealed this decision to a special committee of the hospital's board of trustees. This committee held a hearing at which the physicians again were represented by counsel and again argued against their rejection. The committee voted to reject their applications. Finally, the hospital's board of trustees met on June 26, 1978, and after considering the question of the physicians' applications for staff privileges voted to accept the decision of their special committee and of the active medical staff to reject the physicians' applications. The judge listed nineteen factors that were considered by the trustees in reaching this decision.

The other plaintiffs, Diane Connell, Sandra Kresser, and Deborah Panora, are all residents of communities served by the hospital and were patients of the physicians when the latter applied for staff privileges.

1. *Judicial Review of the Hospital's Actions.*

Initially, we must decide whether the judge's ruling that the hospital's actions constituted State action is correct as a matter of law. The issue whether the actions of a private hospital receiving State and Federal funding may be properly viewed as "State" action within the purview of the Fourteenth Amendment is one of first impression for this court. In *Duby* v. *Baron,* 369 Mass. 614, 622 (1976), we acknowledged that there were divergent views among the jurisdictions on this issue, but we did not reach or answer the question. We now decide that, at least in the circumstances of this case, the hospital's actions cannot properly be considered State action and are therefore not subject to judicial review under the Fourteenth Amendment.

The distinction between public and private hospitals has long been recognized by the courts. This distinction has been defined in widely quoted language from *Levin* v. *Sinai Hosp. of Baltimore City, Inc.,* 186 Md. 174, 178 (1946): "The essential difference between a public and a private corporation has long been recognized at common law. A public corporation is an instrumentality of the state, founded and owned by the state in the public interest, supported

by public funds, and governed by managers deriving their authority from the state. Public institutions, such as state, county and city hospitals and asylums, are owned by the public and are devoted chiefly to public purposes. On the other hand, a corporation organized by permission of the Legislature, supported largely by voluntary contributions, and managed by officers and directors who are not representatives of the state or any political subdivision, is a private corporation, although engaged in charitable work or performing duties similar to those of public corporations. . . . So, a hospital, although operated solely for the benefit of the public and not for profit, is nevertheless a private institution if founded and maintained by a private corporation with authority to elect its own officers and directors." The plaintiffs do not contend that the hospital is a public corporation but nevertheless urge that its contacts with the State and Federal governments are such as to warrant a finding that its actions are subject to judicial review under the Fourteenth Amendment.

In *Burton* v. *Wilmington Parking Auth.*, 365 U.S. 715, 725 (1961), the United States Supreme Court held that a private institution's conduct is subject to the Fourteenth Amendment if the relationship between the State and the institution is symbiotic in character and if "[t]he State has so far insinuated itself into a position of interdependence . . . that it must be recognized as a joint participant in the challenged activity." In *Jackson* v. *Metropolitan Edison Co.*, 419 U.S. 345, 351 (1974), the Court defined the inquiry as "whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." In answering that question the Court considered whether the State had directly encouraged or approved the particular practice under challenge and found that it had not. *Id*. at 354.

In the present case, the judge found that the hospital had the following connections with the State and Federal governments. In 1967, the hospital received $400,000 under the Hill-Burton Act, 42 U.S.C. §§ 291 et seq. (1976), repre-

senting approximately ten percent of the total construction cost of a new wing. In addition, the hospital's first mortgage of $12,160,000 is insured by the Federal Housing Authority. The hospital's second mortgage of $6,914,179 is federally guaranteed under the Hill-Burton Act, and the hospital receives an annual interest subsidy of three percent on the second mortgage under the same Act. As a condition of receiving the Federal funds, the hospital must provide medical care to indigents. 42 U.S.C. § 291c (e) (1976). The hospital also provides services to certain United States military personnel stationed at the naval air station in Weymouth and receives Federal reimbursement for these services. The hospital is licensed and regulated by the Commonwealth and is tax exempt. In 1974, the hospital received a certificate of need from the State Public Health Council for the construction of an addition to one wing of the hospital.

We have carefully considered the facts of this case and we are persuaded that they do not justify a ruling that the challenged action occurred under color of State law. The judge apparently placed heavy weight on the fact that the hospital received Hill-Burton funds and other State and Federal aid. However, eight Federal Circuit Courts which have addressed the question have held that a private hospital's actions are not State action for the purposes of the Fourteenth Amendment, even though it receives Hill-Burton funding and medicare or medicaid payments, is tax exempt, and is licensed and regulated by the State. *Schlein* v. *Milford Hosp., Inc.*, 561 F.2d 427 (2d Cir. 1977). *Hodge* v. *Paoli Memorial Hosp.*, 576 F.2d 563 (3d Cir. 1978). *Madry* v. *Sorel*, 558 F.2d 303 (5th Cir. 1977), cert. denied, 434 U.S. 1086 (1978). *Jackson* v. *Norton-Children's Hosps., Inc.*, 487 F.2d 502 (6th Cir. 1973), cert. denied, 416 U.S. 1000 (1974). *Doe* v. *Bellin Memorial Hosp.*, 479 F.2d 756, 760-762 (7th Cir. 1973). *Briscoe* v. *Bock*, 540 F.2d 392 (8th Cir. 1976). *Watkins* v. *Mercy Medical Center*, 520 F.2d 894 (9th Cir. 1975). *Ward* v. *St. Anthony Hosp.*, 476 F.2d 671 (10th Cir. 1973). Only the Fourth Circuit maintains a contrary view. *Sams* v. *Ohio Valley Gen. Hosp. Ass'n.*, 413 F.2d 826, 828 (4th Cir. 1969).

In *Downs* v. *Sawtelle*, 574 F.2d 1 (1st Cir.), cert. denied, 439 U.S. 910 (1978), the plaintiff alleged that doctors at the Milo Community Hospital had conspired to violate her constitutional rights by forcing her to undergo a sterilization procedure. The court analyzed the State's involvement at the hospital and concluded that there was sufficient involvement to constitute State action. However, this conclusion was primarily based on the fact that the board of selectmen of the town of Milo had the power to appoint the hospital's board of directors and in effect controlled the actions of the hospital. In the more recent case of *Rendell-Baker* v. *Kohn*, 641 F.2d 14 (1st Cir. 1981), the court concluded that near total governmental funding — between 91% and 99% — of a privately administered school that was extensively regulated by the government did not constitute sufficient State involvement. The court wrote: "[T]o find that an otherwise privately operated institution is so dominated by the state that all its actions occur 'under color of state law,' we must find that the state actually does control the institution, not just that it could do so. . . . Even near-complete governmental funding does not turn a private charitable and educational institution into a public entity so long as the private institution remains free, in fact, to control its own affairs." *Id.* at 25

We agree with the reasoning of the First Circuit and the majority of the other Circuit Courts. Despite the hospital's receipt of Federal and State funds, its tax-exempt status, and the fact that it is licensed and regulated by the State, the hospital remains a private institution subject to private control. The judge found that the sole administrative power of the hospital, including the power to make ultimate staffing decisions, is vested in its board of trustees who are elected by the membership of the hospital corporation. The plaintiffs have not argued (and there is no evidence or finding) that there was any nexus between the State involvement in the hospital and the trustees' decision. *Briscoe* v. *Bock*, 540 F.2d 392, 396 (8th Cir. 1976). *Sokol* v. *University Hosp., Inc.*, 402 F. Supp. 1029, 1031 (D. Mass. 1975).

The State has no control over the staffing decisions of the hospital. Based on these facts, we rule that the hospital's actions cannot fairly be viewed as the actions of the State.

For policy reasons as well, we think it undesirable for the Massachusetts courts to review the staffing decisions of private hospitals, absent a statutory claim of discrimination. We recognize that hospital authorities, given the particular expertise which they possess, are better situated than courts to make decisions concerning their staffing needs. In addition, if we were to accept the plaintiffs' reasoning and find South Shore Hospital to be a State actor, virtually all private hospitals would fall into this category. Private institutions such as school, colleges, and other nonprofit corporations which receive Federal or State funding might qualify as well. We think it unwise and unnecessary for the court to embark on this path.

For these reasons, we decline to adopt the theory urged by the physicians, and apparently prevailing in a small minority of States, that a private hospital's actions are reviewable under a common law theory of judicial review apart from any finding of State action. The New Jersey Supreme Court developed this novel approach in *Greisman* v. *Newcomb Hosp.*, 40 N.J. 389 (1963). In that case the court said that a private hospital's staff admission policy was subject to judicial review because the hospital was dedicated to a public purpose and its actions should be subject to review for reasons of public policy. *Id.* at 396-397. This has never been the rule in Massachusetts, nor in the majority of other States, and we do not adopt it now.

2. *Declaratory Relief.*

The physicians, in the first complaint, requested in part that the judge, pursuant to G. L. c. 231A, make a binding declaration of their right to receive staff privileges at the hospital by interpreting the hospital's by-laws and by determining the physicians' rights as a matter of law. They now claim that it was error for the judge to enter a judgment of dismissal without having entered judgment declaring the parties' rights with respect to the hospital's by-laws. The

hospital argues that the physicians, as mere applicants for membership, do not have standing to object to or to enforce strict conformance with the hospital's by-laws. We agree with the hospital.

The provisions of G. L. c. 231A are only available when an actual controversy has arisen, as specifically provided in G. L. c. 231A, § 1. An actual controversy within the context of that statute is "a real dispute caused by the assertion by one party of a legal relation, status or right in which he has a definite interest, and the denial of such assertion by another party also having a definite interest in the subject matter, where the circumstances attending the dispute plainly indicate that unless the matter is adjusted such antagonistic claims will almost immediately and inevitably lead to litigation." *Bunker Hill Distrib., Inc.* v. *District Attorney for the Suffolk Dist.*, 376 Mass. 142, 144 (1978), quoting from *School Comm. of Cambridge* v. *Superintendent of Schools of Cambridge*, 320 Mass. 516, 518 (1946). See J.R. Nolan, Civil Practice § 1108 (1975).

Even if there is an actual controversy, a plaintiff must demonstrate the requisite legal standing to secure its resolution. *Massachusetts Ass'n of Independent Ins. Agents & Brokers, Inc.* v. *Commissioner of Ins.*, 373 Mass. 290, 292 (1977). The question whether an actual controversy exists is closely related to the issue of standing. *Id. South Shore Nat'l Bank* v. *Board of Bank Incorporation*, 351 Mass. 363, 366-367 (1966). As we said in *Massachusetts Ass'n, supra,* "[t]he purpose of both the actual controversy and the standing requirements is to ensure the effectuation of the statutory purpose of G. L. c. 231A, which is to enable a court 'to afford relief from . . . uncertainty and insecurity with respect to rights, duties, status and other legal relations.' G. L. c. 231A, § 9, inserted by St. 1945, c. 582, § 1. Such proceedings are concerned with the resolution of real, not hypothetical, controversies; the declaration issued is intended to have an immediate impact on the rights of the parties."

The physicians assert that review under G. L. c. 231A is proper because the courts of the Commonwealth have in the

past resolved disputes over the interpretation of a hospital's by-laws by means of the entry of a declaratory judgment. However, the cases cited by the physicians, *Duby* v. *Baron*, 369 Mass. 614 (1976), and *Jessie* v. *Boynton*, 372 Mass. 293 (1977), involved challenges to the hospitals' by-laws brought by members of the hospital corporations. The physicians are not members of the hospital corporation. They have cited no case, and we can find none, which supports the proposition that an applicant denied membership in a corporation has a right to challenge the corporation's compliance with its own by-laws.

As we stated in *Jessie* v. *Boynton, supra* at 303, "[t]he by-laws of a corporation are a contract between the corporation and its members." Contractual rights, however, do not arise upon an application for membership but only when such application is accepted by the corporation. *First Parish in Sudbury* v. *Stearns*, 21 Pick. 148, 153 (1839). Cf. *Sullivan* v. *Barrows*, 303 Mass. 197, 201 (1939). See also *Maguire* v. *Buckley*, 301 Mass. 355, 360 (1938) (voluntary association has right to prescribe qualifications for membership and decisions on membership not subject to judicial review). Under the facts of this case, and especially in view of our determination that the defendant is a private hospital not acting under color of State law, the physicians have no standing to challenge the hospital's compliance with its by-laws, and an actual controversy, as required by G. L. c. 231A, § 1, does not exist. Therefore the judge did not err in failing to declare the rights of the parties under the by-laws. See *Duane* v. *Quincy*, 350 Mass. 59 (1966). Even if the hospital's decision were in violation of its by-laws, and we express no opinion one way or the other, the proper party to enforce the by-laws, aside from a member of the corporation, is the Attorney General in the exercise of his supervisory power over public charities, pursuant to G. L. c. 12, § 8. *Lopez* v. *Medford Community Center, Inc., ante* 163, 167 (1981). As we stated in *Dillaway* v. *Burton*, 256 Mass. 568, 573 (1926): "[I]t is the exclusive function of the Attorney General to

correct abuses in the administration of a public charity by the institution of proper proceedings [under G. L. c. 12, § 8]. It is his duty to see that the public interests are protected and to proceed in the prosecution or to decline so to proceed as those interests may require." Accord, *Mahoney v. Attorney Gen.*, 346 Mass. 709, 715 (1964).

Because of our conclusion that the physicians have no standing to enforce the hospital's by-laws, we need not reach the issue whether they waived any right to judicial review by signing the applications for admission to staff privileges.

3. *The Patients' Rights Under G. L. c. 111, § 70E.*

The patients requested a declaratory judgment that South Shore Hospital violated the provisions of G. L. c. 111, § 70E, in so far as the hospital deprived them of their freedom to choose a physician and a hospital facility. At the outset we must determine whether the patients have standing to maintain this action. General Laws c. 111, § 70E, inserted by St. 1979, c. 214, is a statute which gives patients or residents of certain health facilities specified rights to health care and information. The Act itself extends a cause of action to "[a]ny person whose rights under this section are violated." The Act further states that "[t]he rights established under this section shall apply to every patient or resident in said facility." We stated in *Boston Edison Co. v. Boston Redevelopment Auth.*, 374 Mass. 37, 46 (1977), that "when an issue involves an area of law governed by a specific statute with a standing requirement, that issue is governed by the standing requirements of the particular statute and not by a general grant of standing."

The judge correctly ruled that the hospital is a "facility" within the meaning of G. L. c. 111, § 70E. He did not, however, rule on whether the patients in this action met the standing requirement of G. L. c. 111, § 70E. The judge ruled on the meaning of the statute without reaching this threshold question. The judge found as fact that one of the patients, Diane Connell, requested in October, 1979, that she be admitted to the hospital for the delivery of a child ex-

pected about November 19, 1979, and specifically requested that the plaintiff physicians be permitted to attend her. The hospital replied on October 24, 1979, that because the physicians did not have staff privileges they would not be permitted to attend her in the hospital. The other two patients never requested admission to the hospital. They allege, however, that their rights were violated by the hospital because the hospital's decision not to admit the physicians to staff privileges deprived them of their statutory freedom, under their interpretation of G. L. c. 111, § 70E, to be admitted to the hospital of their choice (South Shore Hospital) and to be treated by the physicians of their choice.

It is clear from the judge's findings and from the evidence presented at trial, that none of the patients has ever been a patient or resident of the hospital. It seems equally clear, therefore, under the specific language of the statute that they lack the required legal standing to bring this claim. "Parties are not entitled to decisions upon abstract propositions of law unrelated to some live controversy." *Cole* v. *Chief of Police of Fall River*, 312 Mass. 523, 526 (1942), appeal dismissed, 319 U.S. 581 (1943). See also *Department of Community Affairs* v. *Massachusetts State College Bldg. Auth.*, 378 Mass. 418, 422 (1979).

In spite of the patients' lack of standing under G. L. c. 111, § 70E, we believe it appropriate to examine the merits of the issue raised in view of the fact that the parties have argued the case and the judge has ruled on the merits. This is particularly appropriate because the case presents "an important public question whose resolution will affect more persons than the parties to the case . . . [and which] is primarily a matter of statutory interpretation, not dependent on the facts of the particular case." *Department of Community Affairs, supra* at 424, quoting from *Lahey Clinic Foundation, Inc.* v. *Health Facilities Appeals Bd.*, 376 Mass. 359, 372 (1978). See *Wellesley College* v. *Attorney Gen.*, 313 Mass. 722, 731 (1943).

The pertinent part of G. L. c. 111, § 70E, as amended by St. 1979, c. 720, reads as follows: "Every such patient or

resident of said facility shall have, in addition to any other rights provided by law, the right to freedom of choice in his selection of a facility, or a physician or health service mode, except in the case of emergency medical treatment or as otherwise provided for by contract, or except in the case of a patient or resident of a facility named in [G. L. c. 19, § 14A]; provided, however, that the physician, facility, or health service mode is able to accommodate the patient exercising such right of choice." The patients argue that this statute should be interpreted as giving them freedom to choose a facility *and* a physician. They argue that the only limitation placed upon a patient's choice by the statute is that the facility or physician must be able to accommodate the patient. They interpret this to mean that a hospital may deny access to a patient only because of lack of available beds or lack of availability of the kind of treatment which the patient needs. The hospital argues that this section of the statute should be interpreted to mean that a patient has the right to choose a hospital *or* a physician. The judge agreed with the hospital's interpretation of the statute, ruling that the patients had a right to select their hospital or their physicians, but not both. We agree with his ruling.

The section of the statute in question provides that a patient has "the right to freedom of choice in his selection of a facility, or a physician or health service mode." This language of the Act makes it clear that these rights are in the alternative. "The word 'or' is given a disjunctive meaning unless the context and the main purpose of all the words demand otherwise." *Eastern Mass. St. Ry.* v. *Massachusetts Bay Transp. Auth.*, 350 Mass. 340, 343 (1966), and cases cited. The statutory context does not demand otherwise. As the judge noted, a preliminary version of G. L. c. 111, § 70E, 1978 House Doc. No. 5253, contained no comma following the word "facility" in the above-quoted sentence, while the enacted version did contain a comma. The insertion of the comma provides additional evidence that the Legislature intended that these rights be in the alternative.

There are also strong policy considerations which lead us to this interpretation. Acceptance of the plaintiffs' view of the statute would give a hospital patient the absolute right to choose a physician who is not on the hospital's staff and indeed could give a patient the right to choose a physician who had been barred from that facility for reasons of incompetence. The granting of a right so broad could greatly expand a hospital's liability. If the Legislature had intended to take such a radical step, we think it would have done so by inserting in the statute an explicit provision to that effect. In short, we find no reason to go beyond the clear wording of the statute, and accordingly we give the word "or" its usual disjunctive meaning.

We affirm the judgments of the Superior Court for the defendant.

*So ordered.*