AUBREY J. KATZ & another[1] *vs.* THE CHILDREN'S
HOSPITAL CORPORATION.

No. 91-P-485.

Suffolk. September 11, 1992. - November 16, 1992.

Present: DREBEN, FINE, & IRELAND, JJ.

*Hospital,* Appointment to staff. *Doctor,* Employment. *Contract,* Perform-
ance and breach, Employment, By-laws of charitable corporation,
Physician.

A hospital corporation's by-law provision that assigned finality to decisions
under the grievance procedure to an arbiter (the board of trustees) was
not subject to judicial review, where the decision of the arbiter restrict-
ing certain medical staff appointments was a reasonable interpretation
of the by-laws. [578-579]

CIVIL ACTION commenced in the Superior Court Depart-
ment on October 17, 1986.

The case was heard by *John Paul Sullivan,* J., on a mo-
tion for summary judgment.

*William P. Homans, Jr.,* for the plaintiffs.
*Eleanor D. Acheson* for the defendant.

DREBEN, J. After the department of medicine at the Chil-
dren's Hospital (hospital) established or reinforced its policy
of having a full-time staffing model which prohibited physi-
cians in the department's subspecialties from engaging in pri-
vate practice, the plaintiffs, Drs. Katz and Flores, were of-
fered full-time positions in their field of gastroenterology.
The physicians, however, wished to continue as part-time
members of the hospital staff so as to continue in private
practice. This was unacceptable to the chief of medicine and
to the members of the steering committee of the medical
staff executive committee, the persons who, under the by-

---
[1]Alex F. Flores.

laws, make recommendations to the hospital board of trustees (trustees) concerning reappointments. As a consequence, although the two physicians were reappointed, their privileges of using gastroenterological facilities at the hospital were restricted. The physicians, claiming that the action of the hospital violated its by-laws, initiated a fair hearing procedure under those by-laws. Unable to convince the hearing committee or the trustees (the latter being the final arbiters under the fair hearing plan) of their interpretation of the by-laws, the plaintiffs brought this action claiming that the hospital decision is subject to judicial review because, among other reasons, the final arbiter under the by-laws is the governing board of the hospital rather than a neutral arbitrator. On motion of the hospital, a judge of the Superior Court entered summary judgment for the defendant. We hold that the by-law provision assigning finality to the decision under the grievance procedure (fair hearing plan) must be upheld, at least where, as here, the decision of the arbiter is a reasonable interpretation of the by-laws.[2]

The parties entered into the following stipulation in the Superior Court:

> "The sole remaining issue to be decided in this action is the claim of Katz and of Flores that the Hospital, in restricting the Medical Staff appointments of Katz and of Flores as of October 16, 1986, in accordance with a letter of February 25, 1986, from David G. Nathan, M.D. [chief of the department of medicine] has violated the hospital's Medical Staff By-Laws and/or rights of Katz and Flores thereunder."

---

[2]Since in this case we consider the by-law interpretation by the arbiter a reasonable one, we need not decide what is the applicable standard of review where final authority is vested in the hospital board, a nonneutral arbiter. Compare G. L. c. 150C, § 11, and *Salem Glass Co.* v. *Joseph Rugo, Inc.*, 343 Mass. 103, 105 (1961) (parties bound by decision of a neutral third person "in the absence of fraud or such gross mistake that bad faith or failure to exercise honest judgment is implied"), with the later discussion in that case at 106 (where employer sole judge of grounds of discharge, decision must be reasonable). See also *Smith* v. *Allmon*, 17 Mass. App. Ct. 712, 715 (1984).

We assume for purposes of decision, as argued by the plaintiffs, that the by-laws of the hospital created contractual rights in the plaintiffs.[3]

In arguing that the restrictions on their use of hospital facilities are in violation of the by-laws, the plaintiffs rely on an antidiscrimination provision in the by-laws (set forth in full in the margin)[4] which provides that clinical privileges shall not be denied "on the basis of any . . . criterion unrelated to the delivery of quality patient care in the Hospital, to professional qualifications, to the hospital's purposes, needs and capabilities." They also rely on §§ 5.5-9 and 6.2-2 of the by-laws, which provide that clinical privileges on reappointment are to be based on "professional ability and clinical judgment in the treatment of patients," and that requests for clinical privileges are to be "evaluated on the basis of the practitioner's education, training, experience, demonstrated ability and judgment." Since the doctors met those qualifications, they claim they should have been reappointed with full staff privileges.

The plaintiffs also challenge the method by which the fulltime policy was adopted, arguing that nothing in the record shows that the medical staff of the hospital as a whole, with participation by the steering committee of the medical staff executive committee, developed the policy.[5] Such a drastic

---

[3]See generally *Duby* v. *Baron*, 369 Mass. 614, 620 (1976); *Duby* v. *Jordan Hosp.*, 369 Mass. 626, 630 (1976); *Hobson* v. *McLean Hosp. Corp.*, 402 Mass. 413, 416 (1988); *Saint Louis* v. *Baystate Med. Center, Inc.*, 30 Mass. App. Ct. 393, 403 (1991). Counsel for all parties agreed that the two doctors had signed a statement agreeing to abide by the by-laws.

[4]"3.2-3 Nondiscrimination

"No aspect of Medical Staff membership or particular clinical privileges shall be denied on the basis of sex, race, age (except as specified in 3.4-2), creed, color, handicap or national origin or on the basis of any other criterion unrelated to the delivery of quality patient care in the Hospital, to professional qualifications, to the Hospital's purposes, needs and capabilities, or to community need."

[5]As indicated earlier, the steering committee of the medical staff executive committee approved the restrictions placed on the plaintiffs' reappointments. In doing so, they stated: "Dr. Nathan [chief of department of medicine] is recommending that their [Drs. Katz and Flores] use of certain Hospital Facilities be consistent with that of other community-based

change as establishing a full-time policy, they contend, must be instituted in that manner, and the chief of the department and the chief of the division were powerless to institute the policy. Reading the provisions as a whole, they claim that only the criteria of §§ 5.5-9 and 6.6-2 should be considered by the hospital in restricting the physicians' privileges.

The powers of the department and the division are not so narrowly conceived by the by-laws as the plaintiffs maintain. Thus, departments, under § 9.4, are given "primary responsibility . . . to assure the quality and effectiveness of patient care in the department." Each department chief under § 10.3-2(d)(1) & (2) is "accountable . . . for the quality of patient care rendered by members of his department" and is to develop and implement programs for "medical care evaluation studies, ongoing monitoring of practice, credentials, review and privileges delineation, . . . and quality assurance." Section 10.3-3(d) provides that "[e]ach Division Chief shall . . . develop and implement, in cooperation with his Department Chief, programs to carry out the quality review, evaluation and monitoring functions assigned to his division . . ." and to "[e]xercise general supervision over all clinical work performed within his division."

Uncontroverted affidavits of both the chief of the department of medicine (Dr. Nathan) and of the chief of the division of gastroenterology, Dr. Walker (who had held the same position at the Massachusetts General Hospital) indicate that the policy was implemented for considerations relevant to the clinical and teaching duties of a department chief and a division chief. The affiants stated that they considered full-time staffing, a model developed at the Massachusetts General Hospital, the appropriate way to treat gastroenterological patients at the hospital.[6] Dr. Nathan stated that when he

---

specialists in the Department of Medicine." This sentence strongly suggests that the policy was one known to and approved by the committee. We do not, however, rely on this inference and also do not consider whether the plaintiffs have standing to make the claim that the wrong persons adopted the full-time policy.

[6] A report (Watkins Report) pointed to problems in the division because of the existence of two categories of staff (full-time and part-time). The

began as chief of medicine, virtually all of the subspecialties within the department were staffed by full-time physicians employed at the hospital,[7] and that he "further established and reinforced that policy."

In this case, because of our reliance on the fair hearing plan contained in the by-laws, it is unnecessary for us to decide whether the proper criteria were followed in restricting the plaintiffs' privileges. Our discussion merely points out that the decision upholding the restriction of the plaintiffs' privileges as not in violation of the by-laws was a reasonable one.[8] Moreover, because of the strong policy reasons which make it undesirable for a court to review staffing decisions of hospital authorities, given their particular expertise, we would be reluctant to undertake such a review. See *Bello* v. *South Shore Hosp.*, 384 Mass. 770, 777 (1981).

Here, the plaintiffs invoked the fair hearing plan of the by-laws for solving decisions "adverse" to practitioners. That plan was detailed and provided for a "final" decision.[9] The plaintiffs make no claim that the procedure which was fol-

president of the hospital, the chief of the department of medicine (Dr. Nathan) and the chief of the division of gastroenterology (Dr. Walker) all averred in their affidavits that the operation of two separate and competitive groups of gastroenterologists, one wholly independent consisting of Dr. Katz and Dr. Flores, and one hospital-based, caused substantial damage to the hospital's program. In addition, Dr. Nathan believed that the continuation of the two groups would destroy the joint program being built. by the hospital with the department of gastroenterology at the Massachusetts General Hospital.

[7]Although the plaintiffs dispute this, they also agree that there is no material issue of fact precluding the entry of summary judgment.

[8]The fair hearing committee issued a comprehensive and thoughtful decision concluding that the chief of a department has the prerogative to set reasonable policies, that a full-time plan is justifiable, and that it was not applied to Drs. Katz and Flores in an arbitrary, capricious, unreasonable, or discriminatory manner.

[9]Pointing to a provision in the by-laws requiring applicants for an *initial* appointment to include in their applications a statement agreeing to exhaust the administrative remedies of the by-laws before resorting to formal legal action, the plaintiffs contend that the by-laws envisage judicial review. They fail to recognize that the provision only applies to initial applicants, who, under our case law, are not bound by the by-laws and have no standing to challenge them. *Bello* v. *South Shore Hosp.*, 384 Mass. at 779.

lowed was unfair, and only argue that the decision should not be binding on them because the final arbiter was not an independent third person, but was rather the governing board of the hospital. The by-laws, urged by the plaintiffs to be a contract, set forth how the hearing committee was to be constituted, see *Astoria Medical Group* v. *Health Ins. Plan of Greater New York*, 11 N.Y. 2d 128, 135 (1962), and the doctors received the process prescribed by the by-laws. They are entitled to no more. See *Saint Louis* v. *Baystate Med. Center, Inc.*, 30 Mass. App. Ct. 393, 403 (1991).

*Judgment affirmed.*