Connors, Thomas A., J.
The plaintiff, Salah E. Reyad, M.D. (Dr. Reyad), had been a member of the active medical staff of defendant Caritas Norwood Hospital Inc. (the hospital) for sixteen years before his application for reappointment to the medical staff was denied in December 2010. In this lawsuit, Dr. Reyad claims he was denied reappointment and the position of Chief of Medicine as consequences of his whistleblowing activities. He alleges that the peer review process through which he challenged the denial of his reappointment was a “sham.” He further claims that defendant, Dr. Deiya Bora Hazar (Dr. Hazar), a prominent member of the peer review process, was his direct competitor and abused his position in the process to oust Dr. Reyad from the hospital.
Consequently, Dr. Reyad is seeking a declaratoiy judgment that he be reappointed to the medical staff as Chief of Medicine. He has brought claims against the hospital for breach of the implied covenant of good faith and fair dealing, intentional interference with advantageous business relationships, and violations of G.L.c. 93A, G.L.c. 149, §187(b), the Medical Whistleblower Statute, and G.L.c. 93, §4, the Antitrust Statute. Against Dr. Hazar, Dr. Reyad has brought claims for intentional interference with advantageous business relationships and violations of c. 93A and the Antitrust Statute.
The hospital and Dr. Hazar have brought a motion under Mass. Rule of Civil Procedure 12(b)(6) seeking dismissal of all eight counts against them. The motion was heard on June 8, 2011. For the reasons set forth, the motion is Allowed in part and Denied in part.
The Legal Standard
For purposes of a motion brought under Rule 12(b)(6), the allegations contained in the complaint must be treated as true, and the plaintiff is entitled to all favorable inferences to be drawn therefrom. Gen. Motors Acceptance Corp. v. Abington Casualty Ins., Inc., 413 Mass. 583, 584 (1992). Amotion to dismiss grounded upon the Rule should be granted only where it is certain that the plaintiff is not entitled to relief under any combination of facts that could be drawn or reasonably inferred, from the allegations contained in the complaint. Ligerman v. Putnam Investments, Inc., 450 Mass. 281, 286 (2007). At the same time, however, the Rule does permit for the prompt resolution of a case where the allegations in the complaint clearly demonstrate that the plaintiffs claim is legally insufficient. Harvard Crimson v. President & Fellows of Harvard College, 445 Mass. 745, 749 (2006).
Further, notwithstanding the “relatively light” burden which the plaintiff needs to overcome in order to survive such a motion, Warner-Lambert v. Execuquest, 427 Mass. 46, 47 (1998), citing Gibbs Ford, Inc. v. Truck Leasing Corp., 399 Mass. 8, 13 (1987), it is still required that the plaintiff provide “more than labels and conclusions” as a basis for his claim. Iannocchino v. Ford Motor Co., 451 Mass. 623, 636 (2008), quoting Bell Alt. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The allegations set forth in the complaint must plausibly suggest the plaintiffs entitlement to relief. Id.
Ruling
A. Does the nature of parties’ relationship preclude plaintiffs ability to assert any claim?
The defendants initially contend that the plaintiffs complaint must be dismissed in toto on three bases. First they assert that the language in Bello v. South Shore Hospital 384 Mass. 770, 777 (1981), requires the court to refrain from interfering in the staffing decisions of private hospitals by dismissing the case entirely. Next they assert that the affirmative defenses of qualified immunity and waiver require dismissal of all the counts in the complaint. In order for a defendant to succeed on a motion to dismiss a claim based on the assertion of an affirmative defense, two strict requirements must be met: 1) “the facts that establish the defense must be definitively ascertainable"; and 2) the facts “must conclusively establish the affirmative defense.” In Re Colonial Mortgage Bankers Corp., 324 F.3d 12, 16 (1st Cir. 2003).
1. Does the language in Bello provide a basis for dismissal of the plaintiffs entire case?
The defendants cite language in Bello v. South Shore Hospital 384 Mass. 770, 111 (1981), for the proposition that Massachusetts courts should not review “the staffing decisions of private hospitals, absent a statutory claim of discrimination.” (Dictum.) The policy reasons that led to that statement, that private hospitals better understand their own staffing needs, however, would be inapplicable to the factual allegations upon which Dr. Reyad premises his complaint, that is, that the peer review process was a “sham” and that its action constituted a violation of the Medical Whistleblower Statute. See Bello, 384 Mass. at 777. Given the factual allegations made, the principles referenced in Bello do not dictate dismissal of counts I-VIII.
2. Does the defense of immunity require dismissal of all the plaintiffs claims?
Defendants next assert the affirmative defense of qualified immunity. It is particularly problematic to dispose of a claim on a 12(b)(6) motion to dismiss based on qualified immunity since the availability of the defense is highly dependent upon the circumstances of the particular claims. See Shine v. Hoffman, 548 F.Sup.2d 112, 122 (D.Vt. 2008).
Given policy concerns that physicians would be hesitant to participate in peer review proceedings for fear of being sued, peer review actions are presumptively valid. Plaintiffs, however, can rebut this presumption by showing that members of the peer review process acted in bad faith. See Ayash v. Dana-Farber *81 Cancer Institute, 443 Mass. 367, 394 (2005) (immunity “does not extend to physicians who participate [in peer review] in bad faith”). Indeed, one Massachusetts Federal District Court in dealing with this issue has observed, “had anyone been economically motivated to conspire to restrain plaintiffs practice, defendants would be unreasonable to believe their conduct constituted a legitimate peer review.” See Egan v. Athol Memorial Hosp., 971 F.Sup. 37, 44 (D.Mass. 1997).
In the case at hand, the plaintiff alleges that the entire peer review process was a mere formality, that his fate was sealed before the process had even begun, and further, that his direct economic competitor had played a predominant role in his review process. These allegations are the type of bad faith which, if proven, would deprive a doctor or hospital from the protection of qualified immunity.[1] See Birbiglia v. St. Vincent Hosp., Inc., 427 Mass. 80, 84, n. 3 (1998) (“The hospital... offers no focused discussion as to why one who commits such a tort [intentional interference with advantageous relationships] would not be thereby shown to have failed to qualify for immunity”). The allegation here is pled sufficiently and it would be improper to grant dismissal at this stage based upon the asserted defense.
3. Does the waiver provision of the by-laws require dismissal of all the counts against the hospital?
The hospital by-laws contain a waiver provision which the hospital contends requires dismissal of Dr. Reyad’s entire case. That provision, however, does not mandate dismissal of the claims because the plaintiff could not waive his rights to the counts asserted. First, he could not waive his right to the implied covenant of good faith and fair dealing. See Pemstein v. Stimpson, 36 Mass.App.Ct. 283, 288-89, citing Wilshire Credit Corp. v. Wehmeyer Realty Trust, 1999 WL 1319226 (Mass.Super. April 29, 1999) (The waiver language of guarantee is “[s]ubject always to the limitations of fraud and bad faith”). Second, he has alleged intentional interference with advantageous business relationships which is an allegation of intentional behavior in bad faith on the part of the hospital which is sufficient to overrule the waiver provision. See id. Finally, plaintiff could not waive his statutory rights under c. 93A, the Medical Whistleblower Statute, or the Antitrust Statute. See Henry v. Mansfield Beauty Academy, Inc., 353 Mass. 507, 511 (1968). Therefore, the principle of waiver does not bar the plaintiffs claims at this juncture.
B. Does the claim for declaratory relief survive the motion to dismiss?
By the express terms of the hospital by-laws the election of a department chief, such as the Chief of Medicine, is subject to the approval of the Board of Trustees. By-Laws Article VIII, §8.3 (Exhibit C). The popular election for Chief of Medicine is described as the “preference” or “recommendation” of the staff, but the by-laws leave the appointment of the Chief up to the ultimate decision of the Board of Trustees. Id. Dr. Reyad may still be entitled to declaratory relief concerning the peer review process and his rights thereunder, and for that reason, dismissal of the declaratory relief count would be improper. However, it should be noted that nothing in the by-laws gives Dr. Reyad the express right to hold the position of Chief of Medicine; for that reason, the survival of the claim does not necessarily mean that he would be entitled to a declaration to such effect from the court. Again, whether or not he is entitled to appointment on the medical staff is dependent upon whether he proves his other claims and as such is not subject to dismissal at this time.
C. Does plaintiffs claim for breach of the covenant of good faith and fair dealing against the hospital survive the motion to dismiss?
To sufficiently allege a breach of the covenant of good faith and fair dealing, plaintiff must allege sufficient facts to establish that: 1) there was a contract between Dr. Reyad and the hospital; 2) the hospital breached the covenant of good faith and fair dealing by destroying or injuring the right of the other party to the fruits of the contract; and 3) the breach caused damages. See Anthony’s Pier Four, Inc. v. HBC Associates, 411 Mass. 453, 471-72 (1991).
The defendants first challenge this claim on the basis that the hospital by-laws do not establish a contract between Dr. Reyad and the hospital. Whether such a relationship is to be regarded as contractual has not been definitively determined by our courts. In a number of decided cases, the existence of a contract has been assumed, with each particular case decided on different grounds. See e.g., Birbiglia, 427 Mass. at 84; Katz, 33 Mass.App.Ct. at 578; St. Louis v. Baystate Medical Ctr., Inc., 30 Mass.App.Ct. 393 (1991). At least one appellate court in another jurisdiction has ruled that hospital staff privileges do not constitute an employment relationship. See Englestad v. Virginia Mun. Hosp., 718 F.2d 262 (8th Cir. 1983). A recent Massachusetts Appeals Court decision, however, described the peer review process as an important part of the parties’ “contractual relationship.” Vranos v. Skinner, 77 Mass.App.Ct. 280, 288 (2010). Given this state of the law, the plaintiff is entitled to assert this claim and to attempt to establish factually that the by-laws amounted to a contract.
Plaintiff alleges that the hospital breached the implied covenant by their actions, including conducting a “sham” review process, and their subsequent failure to reappoint Dr. Reyad. Because this allegation is based on bad faith conduct by the hospital, it suffices as an allegation of a breach of the covenant of good faith and fair dealing since it would injure Dr. Reyad’s right to a fair, impartial and legitimate peer review process. As Dr. Reyad has pled facts that bring his *82 claim to the level of plausibility, this count cannot be dismissed at this stage.
D.Can plaintiffs claim of intentional interference with advantageous business relationships against the hospital survive the motion to dismiss?
To state a claim for intentional interference with advantageous business relationships the plaintiff must allege: 1) advantageous business relationships; 2) that the hospital knowingly interfered with such relationships; 3) the interference was intentional, wrongful or improper in motive or means; and 4) the plaintiff suffered harm to his economic interests as a result. United Truck Leasing Corp. v. Geltman, 406 Mass. 811, 812 (1990). Plaintiff has alleged that in refusing to appoint him Chief of Medicine and in failing to reappoint him to the medical staff, the hospital has improperly interfered with Dr. Reyad’s business resulting in financial injury.
Defendants argue that the claim must be dismissed because the hospital cannot have interfered in a relationship in which it was a party. If the alleged relationship was solely between Dr. Reyad and the hospital this argument would warrant the claim’s dismissal. St. Louis, 30 Mass.App.Ct. at 393. However, in his complaint, Dr. Reyad also cites treatment of patients at his Norwood dialysis facility who are referred to him “through his association with the hospital.” The hospital is not a party to that relationship, and if the facts Dr. Reyad alleges are proven, the hospital could be found to have interfered with such relationships. See Birbiglia, 427 Mass. at 83-84.
Defendants further assert that because the hospital was justified in terminating Dr. Reyad’s hospital privileges they did not act with improper motive or means. Dr. Reyad however has alleged that the peer review process was a “sham” and that the hospital undertook its actions in violation of the Whistleblower Act. While the hospital is certainly entitled to put forward legitimate reasons for Dr. Reyad’s termination, at the Rule 12(b)(6) stage, the allegations of improper motive and means are sufficient to survive the motion to dismiss.
E.Does plaintiffs intentional interference with advantageous business relationships claim against Dr. Hazar survive the motion to dismiss?
With respect to the claim of intentional interference with advantageous business relationships against Dr. Hazar, the requirements are the same as stated above. It is true that hospital administrators normally enjoy a privilege when expressing their views on physicians. See Chakrabarti v. Cohen, 31 F.3d 1, 5 (1st Cir. 1994). However, it has been ruled that such privilege does not extend to administrators who act with improper motive or means. Id. This claim cannot be dismissed at this juncture because Dr. Reyad has alleged that Dr. Hazar, as a direct economic competitor acted to oust Dr. Reyad from the hospital staff. Indeed, his complaint even cites a specific statement allegedly made by Dr. Hazar evidencing hostility based upon improper competitive motive in his complaint. He has thus raised his right to relief above the speculative level and the claim is not subject to dismissal.
F.Did plaintiff sufficiently allege a violation of c. 93A by the hospital to survive the motion to dismiss?
In order to establish a violation of G.L.c. 93A, plaintiff must allege that: 1) he has suffered a loss of money or property, real or personal; 2) that this loss is a result of an unfair or deceptive act or practice; and 3) that this act or practice was perpetrated by one who engages in the conduct of trade or commerce. G.L.c. 93A, §11. Whether something is an unfair or deceptive act or practice depends on “the nature of the challenged conduct” and “the purpose and effect of that conduct.” Massachusetts Employers Ins. Exchange v. Propac-Mass, Inc., 420 Mass. 39, 43 (1995). Abusing a statutorily mandated peer review process in order to deny a doctor’s privileges at a hospital and retaliating against a doctor for whistleblowing activities is by its nature unfair and deceptive. Furthermore, Dr. Reyad’s allegation asserts that the purpose of the conduct was to oust a “problem maker” to benefit the hospital economically. These allegations, if proven, rise to the requisite level of unfairness to survive the motion to dismiss.
Defendants first assert that the hospital was not engaged in trade or commerce because of its status at the time as a charitable institution. A charitable institution cannot be subject to a c. 93A claim if it is acting in furtherance of its charitable purpose. See All Seasons Servs., Inc. u. Comm. of Health and Hosp. of Boston, 416 Mass. 269, 271-72 (1993). However, when a charity is acting in a business context such that the economic benefits it receives from the decision are not incidental, the immunity no longer applies. See Linkage Corp. v. Trs. of Boston Univ., 425 Mass. 1, 25 (1997). Here, plaintiff has alleged that the hospital’s actions were driven by economic motivation because it specifically sought to profit from its implementation of the “hospitalist” program. See Dushkin v. Desai, 18 F.Sup.2d 117, 125 (D.Mass. 1998) (finding that the business context should depend on the defendant’s rather than plaintiffs motivation). Dr. Reyad contends that given the impending sale of the hospital, ousting him from the hospital was the hospital’s method of reducing opposition to the “hospitalist” program. Whether the plaintiff can prove this at trial, he has alleged sufficient facts that the hospital’s motivation was business in nature to survive the 12(b)(6) motion to dismiss.
Defendants press a second argument, that the intra-enterprise exception to c. 93A bars plaintiffs claim. Because the purpose of c. 93A is to encourage fair and equitable practices in the marketplace, c. 93A does not apply when the parties involved constitute *83 the same legal entity. See Poznik v. Massachusetts Medical Professional Ins. Ass’n., 417 Mass. 48, 52 (1994). See also Szalla v. Locke, 421 Mass. 448, 452 (1995). For this reason an action between an employer and an employee is not subject to c. 93A. See Manning v. Zuckerman, 388 Mass. 8, 13-14 (1983). If the hospital’s actions toward Dr. Reyad were strictly part of an internal staffing decision, this would clearly fall under the exception to c. 93A liability because the transaction would not be between two legally distinct entities interacting in the marketplace. However, Dr. Reyad has sufficiently pled that he is not a traditional employee of the hospital because he operates a separate and distinct out-patient clinic. This fact, coupled with the unique relationship between physicians and hospitals at which they have privileges, brings this outside the realm of a mere employer-employee staffing decision. For that reason, the c. 93A claim is not subj ect to dismissal on the basis of either exception to the statute at this juncture.
G. Does plaintiffs claim of violation of c. 93A by Dr. Hazar survive the motion to dismiss?
The requirements for a c. 93A violation against Dr. Hazar are the same as stated above. The allegations of specific deceptive practices against Dr. Hazar are similarly factually dependent and better suited for summary judgment. Dr. Hazar and Dr. Reyad appear to be separate and distinct legal entities within the meaning of the statute such that c. 93A liability may lie. While Dr. Hazar is a member of the hospital, he is also alleged to be the manager of the Westwood Dialysis Center in the complaint and the plaintiff cites this status to argue that Dr. Hazar may be liable under the statute notwithstanding that he was acting within the scope of his hospital employment during the peer review process. For that reason the c. 93A claim cannot be dismissed against Dr. Hazar.
H. Did Plaintiff sufficiently allege a violation of the Medical Whistleblower Statute to survive the motion to dismiss?
The Medical Whistleblower Statute provides in pertinent part that
A health care facility shall not refuse to hire, terminate a contractual agreement with or take any retaliatory action against a health care provider because the health care provider does any of the following ... (1) discloses ... to a manager ... an activity, policy or practice of the health care facility . . . that the health care provider reasonably believes is in violation of a law or rule or regulation promulgated pursuant to law or violation of professional standards of practice which the health care provider reasonably believes poses a risk to public health.
G.L.c. 149, §187(b)(l). It is undisputed that the hospital is a health care facility under the definition of the Statute and that Dr. Reyad is a health care provider.
Defendants instead assert that the “taking retaliatory action” against a health care provider clause is only applicable when that health care provider is an employee of the health care facility. The Appeals Court, however, has explicitly found that alleged retaliatoiy action taken by a health care facility against a health care provider who was an independent contractor, could not be disposed of at the summary judgment stage for lack of an employment relationship. See Commodore v. Genesis Health Ventures, 63 Mass.App.Ct. 57, 66 (2005) (stating that “the concerns about the quality of patient care at health care facilities and not just the employment relationships of the health care providers” suggest a liberal interpretation of the Medical Whistleblower Statute). While it is true that not every health care provider is protected by the statute, Dr. Reyad has sufficiently pled that his actions are covered given the nature of his relationship with the hospital. See id.
Additionally, as discussed supra, the plaintiff has sufficiently alleged a contractual relationship with the hospital which could serve as the basis for a Medical Whistleblower Act violation. As Dr. Reyad has also sufficiently alleged termination of the contractual relationship in the form of the hospital’s failure to reappoint him to the medical staff, this would suffice to allege a violation of the Whistleblower Statute. See Vranos v. Skinner, 77 Mass.App.Ct. at 288.
Next, defendants challenge the sufficiency of Dr. Reyad’s pleading as to the specific disclosures he made. Defendants contend that because he has failed to specifically enumerate which laws, rules, regulations, or professional standards he noted violations of his pleading is per se insufficient. See Romero v. UHS of Westwood Pembroke, Inc., 72 Mass.App.Ct. 540, 542 (2008). The complaint, however, states that Dr. Reyad brought issues related to hospital policies concerning patient care, health hazards, and Medicare violations to the attention of the hospital’s President and other managers. On a motion to dismiss these allegations suffice.
Defendant’s final argument is that Dr. Reyad’s loss of privileges and failure to be appointed Chief of Medicine cannot be causally related to his alleged whistleblowing activities because these results were a consequence of his “unprofessional and disruptive behavior.” To qualify under the Whistleblowing Statute, the protected activities must be “a substantial or motivating part” of the adverse employment action. Romero, 72 Mass.App.Ct. at 540, n. 4, citing Taylor v. Freetown, 479 F.Sup.2d 227, 241 (D.Mass. 2007). Dr. Reyad has alleged that his whistleblowing activities were a direct and proximate cause, as well as the but-for cause of his loss of privileges. He has further alleged that the proceedings in which the hospital found his behavior to have been “unprofessional and disruptive” was a “sham.” While the court need not accept allegations that are conclusoiy or implausible, the determination of whether his activities were causally related to his loss of privileges is factual in nature *84 and thus better suited to a motion for summary judgment. See Dermesropian v. Dental Experts, LLC, 718 F.Sup.2d 143, 147 (D.Mass. 2010).
I. Did plaintiff sufficiently plead a violation of the Antitrust Statute?
In order to survive a motion to dismiss on an antitrust claim, plaintiff must sufficiently allege that: 1) there was a contract, combination, or conspiracy and 2) a restraint of trade or commerce in the commonwealth. See Benjamin v. Aroostook Med. Ctr., 937 F.Sup. 957 (D.Me. 1996), aff'd, 113 F.3d (1st Cir. 1997) (per curiam). Without expressly saying so, plaintiff appears to make two separate antitrust claims. First, he alleges that the hospital has significant power in the market for in-patient ne-phrology services performed at the hospital and that Dr. Hazar conspired with the hospital to restrain trade in this market by utilizing the peer review process to oust him. Dr. Reyad further claims that as a result, competition has decreased in that market, inter aha, through a decrease in the quality of patient care.
Defendants challenge this claim by asserting that in Massachusetts it is impossible for a hospital to conspire with its own medical staff acting in peer review. See id. The law on this point, however, is more nuanced since there exists an exception when the member of the medical staff is acting for his own economic benefit. In such instances, rather than acting as an agent for the hospital to implement a uniform hospital policy, the member of the medical staff would be acting as a separate and distinct entiiy capable of conspiring with the hospital. See Podiatrist Ass’n., Inc. v. La Cruz Azul De Puerto Rico, Inc., 332 F.3d 6, 13-14 (1st Cir. 2003); Islami v. Covenant Medical Center, Inc., 822 F.Sup. 1361, 1382 (N.D.Iowa 1992).
In this case, however, no plausible allegation is made that Dr. Hazar acted with independent economic motive in the peer review process with respect to a desire to restrain trade in the in-patient market at the hospital. Plaintiff alleges that the hospital acted in the peer review process to oust Dr. Reyad in retaliation for his whistleblowing activities and in order to push forward the “hospitalist” program to which he objected. The program would give all “unassigned” patients to hospital employees rather than to private practitioners with privileges at the hospital, thus benefiting the hospital economically at the expense of the private practitioners. As Dr. Hazar is a private doctor, he would have been directly harmed by the adoption of this policy such that he would have no incentive to support the policy outside of his role as an agent of the hospital. In such circumstances, the hospital could not plausibly conspire with Dr. Hazar because Dr. Hazar would only be acting in such agency role to implement a universal hospital policy.
Finally, plaintiffs allegations as to the injury to competition are also insufficient. While he alleges an injury to competition in the market for in-patient nephrology services at the hospital he gives no factual. basis for this conclusion. The only allegation he makes is that the quality of patient care has decreased. This is fatal to his claim because a decrease in patient care is not equivalent to a decrease in competition. A decrease in competition necessarily implies a decrease in output and increase in prices neither of which are alleged in this case. See Sullivan v. Nat’l Football League, 34 F.3d 1091, 1099 (1st Cir. 1994).[2] Because Dr. Hazar was not acting with independent economic motive to restrain trade in the market for in-patient nephrology services at the hospital ánd the plaintiff has failed to allege a decrease in competition, this part of the anti-trust claim must be dismissed.
Plaintiff next alleges that the hospital and Dr. Hazar have conspired to restrain trade in the market for outpatient nephrology services in the Norwood-Westwood area. While the allegation that Dr. Hazar was acting with independent economic motive here is sufficient as they are direct competitors in this market, this claim still suffers from the same infirmiiy as to the harm to competition alleged.[3] Furthermore, plaintiffs allegation that Dr. Hazar exercises the requisite degree of market power for out-patient nephrology services is insufficient. While he alleges that Fresenius Medical Care, the parent company of Westwood Dialysis Center, Dr. Hazar’s out-patient center, has sufficient market power, plaintiff has failed to connect that alleged market power of the non-party Fresenius to Dr. Hazar. In his brief, Dr. Reyad states that as an agent of Fresenius, Dr. Hazar could be held liable; however, there is no such allegation in the complaint that Dr. Hazar was acting as an agent or was acting in the scope of his employment during his actions in the peer review process. Thus, the allegation that Dr. Hazar was exercising that requisite degree of market power is sufficient to establish an injuiy to competition fails and the anü-trust claim must be dismissed.
Order
The defendants’ motion to dismiss is Allowed as to count VI, the Antitrust claim, but Denied as to all other counts.

Defendants rely on the decision in Katz v. Children’s Hosp. Corp., 33 Mass.App. 574, 578 (1992). There the court ruled that it would not intervene in a hospital’s procedure related to physicians’ privileges beyond requiring adherence to hospital by-law procedures. In its ruling in Katz, the Appeals Court specifically noted that plaintiffs there “make no claim that the procedure which was followed was unfair,” a circumstance entirely at odds with the claim asserted by Dr. Reyad here, which renders Katz wholly inapposite.

Dr. Reyad also lacks standing to challenge this injury as he is not a patient who has suffered as a result of the decrease in the quality of patient care.

Defendants also assert that the hospital and Dr. Hazar cannot conspire to restrain trade because they are in different markets, however, the law is clear that entities operating in different markets may nonetheless be liable for conspiring to restrain trade in a single market. See TYR Sport, Inc. v. Warnaco Swimwear, Inc., 679 F.Sup.2d 1120, 1135 (C.D.Cal. 2009) (“A single market participant can conspire with a nonparticipant to restrain trade”).