THE SALEM GLASS CO. *vs.* JOSEPH RUGO, INC.

Suffolk.  December 7, 1960. — June 29, 1961.

Present: WILKINS, C.J., SPALDING, WILLIAMS, CUTTER, & KIRK, JJ.

*Contract,* Building contract, Construction, Implied contract. *Practice, Civil,* Requests, rulings and instructions. *Law or Fact.*

A request for a ruling predicated on an assumption of a fact not required to be found by the finder of facts may properly be refused.  [105]

In a subcontract to furnish and deliver to the general contractor on a building project exterior wood window frames as specified in the general contract, a provision that the subcontractor would be "bound by the decision of the [general] contractor as to the construction and meaning of the plans and specifications, such decision to be final," imported a decision which was reasonable.  [106]

A subcontract with the general contractor on a building project, whereby the subcontractor agreed to "furnish and deliver to job site" exterior wood window frames as specified in the general contract and to be "bound" by reasonable decisions of the general contractor as to the construction and meaning of the plans and specifications, was latently ambiguous as to the obligation of the subcontractor to furnish "blocking," a narrow wooden strip inserted between the frames and the mouldings, and, in an action against the general contractor by the subcontractor, it was for the jury to determine on extrinsic evidence whether the plaintiff was obligated to furnish blocking and whether a decision that he was so obligated made by the defendant was reasonable and therefore controlling.  [106–108]

CONTRACT.  Writ in the Superior Court dated August 27, 1957.

The action was tried before *Goldberg,* J.

*James G. Fay,* for the defendant.

*Morris Fulman & Harry Reinherz,* for the plaintiff, submitted a brief.

WILLIAMS, J.  In this action of contract the defendant is the contractor under a contract with the Commonwealth through the Department of Mental Health for the construction of a medical building at the Danvers State Hospital. It was not disputed that on December 4, 1953, the defendant entered into a subcontract with the plaintiff to "furnish

and deliver to job site'' the required exterior wood window frames and doors as specified in the principal contract. The subcontract provided that the plaintiff should complete the work to the ''full satisfaction'' of the architects and the contractor, and that the subcontractor would be ''bound by the decision of the contractor as to the construction and meaning of the plans and specifications, such decision to be final.'' The plaintiff furnished and delivered the window frames and the decorative moulding or ''staff bead'' which was to be affixed around the outside edges of the frames. The controversy in the present case arose from the failure of the plaintiff to furnish ''blocking.'' Blocking is a narrow triangular strip of wood which is inserted between the window frame and the mouldings. In the process of installing the moulding the blocking is nailed to the frames and in turn the moulding is nailed to it. The moulding and frames are sealed or affixed to the building by an operation known as ''caulking.'' It was the contention of the plaintiff that blocking was no part of the window frame or moulding and that it was not its obligation to supply it.

In count 1 of the plaintiff's declaration, it seeks to recover a balance of $2,999.17 alleged to be due under the contract, and in count 2 the value of its labor and the materials furnished. Counts 3, 4, and 5 are for miscellaneous items unconnected with the principal contract. As to these items the defendant admitted liability. The action was referred to an auditor whose findings of fact were not to be final. He found for the plaintiff on count 1 in the sum of $2,790.13, and for the plaintiff on count 2 in a like amount, ''if, as a matter of law, the plaintiff is entitled to recover in quantum meruit . . . rather than under count 1.'' In a subsidiary finding the auditor found that ''the plaintiff did not violate the terms of the contract nor put the defendant to additional expense by failing to nail the staff bead to the frames, inasmuch as this would have required the defendant to remove same in order to do the caulking required by the specifications.''

At a trial to a jury the plaintiff introduced the auditor's

report and rested. Rugo, the president and treasurer of
the defendant corporation, testified that he told the plain-
tiff's representative it was his decision that Salem was
obligated to furnish the wood window frames with the
blocking and moulding attached; that Salem stated it would
not furnish or attach blocking and that it would not attach
the moulding but that it would "furnish the moulding
loose."

The plaintiff waived count 1 before final arguments and
the jury returned a verdict for the plaintiff on count 2 in
the amount of $2,510.92.

The defendant's exceptions are to the denial of its re-
quests for instructions numbered 5, 6, and 7. In 5, it asked
the judge to rule that "The defendant having decided that
the plaintiff was obligated under his contract to furnish the
blocking for all exterior window frames such decision is
final as between the plaintiff and the defendant." The
judge was not required to grant this request. It was pred-
icated on an assumption that the defendant had decided
that the plaintiff was obligated to furnish blocking, the
only evidence of such decision being the testimony of Rugo,
by which the plaintiff was not bound. See *Liberatore* v.
*Framingham,* 315 Mass. 538, 543. Even if the request were
treated as hypothetical we think it could not have been
given. Parties to a contract who have agreed in advance
to abide by the decision of an architect or engineer in re-
spect to the interpretation of plans and specifications are
bound by his decision in the absence of fraud or such gross
mistake that bad faith or failure to exercise honest judg-
ment is implied. *C. W. Hunt Co.* v. *Boston Elev. Ry.* 199
Mass. 220, 227. *Evans* v. *County of Middlesex,* 209 Mass.
474, 479–480. *Morgan* v. *Burlington,* 316 Mass. 413, 419–
420. *Benjamin Foster Co.* v. *Commonwealth,* 318 Mass.
190, 209. *G. L. Rugo & Sons, Inc.* v. *Lexington,* 338 Mass.
746, 751. And where performance of a contract involves
considerations of taste or personal preference, a condition
that it meet with the satisfaction of one of the parties may
be enforceable. See *C. W. Hunt Co.* v. *Boston Elev. Ry.,*

*supra; Brown* v. *Foster*, 113 Mass. 136, 138–139; *Handy* v. *Bliss*, 204 Mass. 513, 519–520; *Rooney* v. *Weeks*, 290 Mass. 18, 27.

But the instant case is of neither type. The construction and meaning of the plans and specifications are left, not to the judgment of a third person as a quasi arbitrator but to the final decision of one of the parties. No question of personal preference is involved.

We have been referred to no similar case where a decision by a party has been upheld without qualification. In *Chandler, Gardner & Williams, Inc.* v. *Reynolds*, 250 Mass. 309, 314, where the right of the plaintiff to discharge the defendant employee was at issue and under the contract of employment the employer had been made the sole and exclusive judge of the grounds for discharge, it was held that the employer's judgment was to be sole and exclusive only if justly and honestly entertained. In *Hawkins* v. *Graham*, 149 Mass. 284, 288, where the plaintiff agreed to install a heating system in the defendant's mill in a manner satisfactory to the defendant, it was held that the plaintiff fulfilled his contract if he installed the system "in such a way as reasonably ought to satisfy the defendant." The rule stated in the *Hawkins* case has been followed in a line of decisions. *Lockwood Mfg. Co.* v. *Mason Regulator Co.* 183 Mass. 25. *Noyes* v. *Commercial Travellers' E. Acc. Assn.* 190 Mass. 171, 182. *Cashman* v. *Proctor*, 200 Mass. 272, 275. *Handy* v. *Bliss*, 204 Mass. 513, 519, and cases cited. *Wentworth* v. *Manhattan Mkt. Co.* 218 Mass. 91, 96. *MacDonald* v. *Kavanaugh*, 259 Mass. 439, 446. *Bottini* v. *Addonizio*, 261 Mass. 456. *Rooney* v. *Weeks*, 290 Mass. 18, 27. The jury could not rightly have been instructed that the defendant's decision was final without a qualifying instruction that it be determined the decision was reasonable.

The contract said nothing about blocking and there was no evidence that by custom in the building trade a contract to furnish window frames included blocking. The contract was latently ambiguous as to the obligation of the plaintiff to furnish it. Extraneous evidence was therefore intro-

duced to explain the meaning of its terms. This evidence consisted of testimony by Rugo as to discussion by him with the representative of the plaintiff respecting a change in the design of the moulding which would obviate the need for blocking, and of three plans or shop drawings in the form of blueprints which were marked Exhibits 12, 11 and 3. Exhibit 12 was a shop drawing by the plaintiff of window details with the notations, "Received Oct 8 1953 Joseph Rugo, Inc.," and "Approved" by the supervising architect "As corrected — see letter." The print showed window frames and moulding but no blocking. The letter to which reference is made is not before us. Exhibit 11 was a similar drawing by the plaintiff with a notation of the approval of the architect dated December 14, 1953. It also omitted any reference to blocking. Exhibit 3 was an undated plan of roof and window details. It does not appear who prepared it. The location of the moulding and window frames was shown by a series of slanting lines, and a triangular open space between the sets of lines was labelled "blocking."

The finding by the auditor for the plaintiff on count 1 was inferably a finding that the plaintiff was not required to furnish blocking. In view of the extrinsic evidence, whether the plaintiff was required to furnish blocking became a question of fact for the jury. *Rizzo* v. *Cunningham,* 303 Mass. 16, 20–21. *Trafton* v. *Custeau,* 338 Mass. 305, 307–308. If they found that the defendant erred in its decision, it was for them to determine whether such decision was reasonable. We think they could find that if blocking was required to install the window frames and moulding, it was the duty of the contractor to provide it, as in the case of caulking, and that finally to decide against the subcontractor on this point was unreasonable.

There was no error in denying request 6: "Under its contract the plaintiff was obligated to furnish the blocking for all exterior wood window frames." For reasons already stated it could not have been given on the assumption either that the defendant's decision was reasonable, and

therefore controlling, or that as matter of law the contract required blocking.

The judge could not have granted request 7: "Having refused to furnish the blocking for all exterior wood window frames the plaintiff cannot recover under count 2." The instruction assumed that the contract required blocking to be furnished and would have tended to mislead the jury in respect to the issue on which they were expected to make a finding. Even if the instruction had been phrased hypothetically it could not have been ruled that in the circumstances there was such an intentional departure from the contract that it amounted to bad faith and barred recovery. See *Bowen* v. *Kimbell*, 203 Mass. 364, 370; *Lantz* v. *Chandler*, 340 Mass. 348, 349. Compare *Andre* v. *Maguire*, 305 Mass. 515.

*Exceptions overruled.*