STEPHEN J. SMITH, trustee, *vs.* DONALD ALLMON & another.[1]

Barnstable.  December 16, 1983. — April 9, 1984.

Present: DREBEN, HALE, & KASS, JJ.

*Practice, Civil,* Summary judgment. *Contract,* For sale of real estate. *Attorney at Law,* Approval of title to real estate. *Real Property,* Encumbrance.

Where an agreement for the purchase and sale of a parcel of real property provided that the buyer's obligations were contingent upon approval of title by the buyer's attorney, and where the attorney would not approve the title due to language in an earlier conveyance of the parcel which purported to restrict its alienability, the parties were bound by his decision and, in the absence of any factual issue as to the attorney's good faith, the buyer was entitled to summary judgment against the seller in the amount of his deposit.  [714-715]

CIVIL ACTION commenced in the Superior Court Department on May 14, 1982.

The case was heard by *Wagner, J.,* on a motion for summary judgment.

*Richard C. Anderson* for the defendants.

*Lawrence O. Spaulding, Jr.* (*Eric K. Rasmussen* with him) for the plaintiff.

KASS, J.  There was in the purchase and sale agreement a provision that the obligations of the buyer (the plaintiff Smith) "are contingent upon the determination by Buyers' attorney that the rights, easements, restrictions and agreements set forth or referred to in certificate of title No. 1858 or in this agreement shall not directly burden or encumber [the premises], or in any way interfere with the Buyers' ability to use and enjoy [the premises] for residential purposes without restriction."

As matters fell out, the buyer's attorney determined that certain restrictions in the title made it unacceptable. The quarrel

[1] Kimberly Allmon Tiernan.

in the case is whether the buyer's lawyer acted within the scope of the discretion and authority conferred upon him by the approval clause in the purchase and sale agreement. Upon the buyer's motion for summary judgment, a Superior Court judge decided that the buyer was entitled to return by the seller of the buyer's $40,000 deposit, together with interest. The Superior Court judge did not state his reasons and we may, therefore, consider any grounds offered by the buyer in support of his motion for summary judgment. *Gallant* v. *Worcester,* 383 Mass. 707, 709 (1981). *Cady* v. *Plymouth-Carver Regional Sch. Dist., ante* 211, 213 (1983).

In reviewing the title, the buyer's lawyer, Mr. Duffy, came across a restriction which forbade a sale, mortgage or lease of the property save with the prior written approval of the board of directors of Seapuit, Inc.[2]

Mr. Duffy reported to the seller's lawyer that the restriction on alienation interfered with the use and enjoyment of the property "for residential purposes without restriction." If the seller, Mr. Duffy wrote to his opposite number, could not secure a release of the restriction from Seapuit,[3] the deposit was to be returned.[4] The seller's position is that an attorney approval clause of the sort we have to consider in this case re-

---

[2] The full restriction in the deed stated: "The Grantees, or their heirs, executors, administrators, successors and assigns shall not sell, mortgage, convey, lease or rent the whole or any part of the granted premises to any person or corporation without first securing the approval in writing of the Board of Directors of Seapuit, Inc., its successors or assigns, to such sale, mortgage, conveyance, lease or rental. However, a bona fide mortgage may be given during or after construction of a dwelling to a bank established under the laws of the Commonwealth of Massachusetts, and/or any other banks in other states, with the consent of Seapuit, Inc., its successors and assigns."

[3] The record does not identify Seapuit, Inc., but, from the context of several documents in which it is referred to, we infer that Seapuit, Inc., is a homeowners' association for a subdivision in which the locus is situated.

[4] The buyer was ready, able — and apparently willing — to acquire the property free of the offending restriction. He furnished his lawyer with a certified check in the amount of $360,000, and an executed purchase money note and mortgage in the manner required by the purchase and sale agreement. Mr. Duffy appeared at the closing with those funds and papers.

quires the attorney to be satisfied with a title which is good and marketable and that this title is good and marketable because the offending restriction is unenforceable.

The seller's argument cannot be right for the reason, if no other, that the purchase agreement required delivery of a quitclaim deed conveying a good and clear record and marketable title in any event and, therefore, if the attorney approval provision is to be given any meaning, the threshold of approval must have been intended to be at a level higher than a good and marketable title. See *Winchell* v. *Plywood Corp.,* 324 Mass. 171, 180-181 (1949); *MacDonald* v. *Hawker,* 11 Mass. App. Ct. 869, 873 (1981).

There appear to be no Massachusetts cases which have considered the standard by which a lawyer may exercise responsibility conferred upon him in a contract to approve or disapprove an element of a transaction. The question has been discussed in other contexts where parties have agreed to abide by decision of a third party, e.g., an architect or an engineer. In those cases the parties were held bound by the decision of the third party unless that decision was tainted by fraud, bad faith, or a failure to exercise an honest judgment. *Evans* v. *County of Middlesex,* 209 Mass. 474, 479-480 (1911). *Morgan* v. *Burlington,* 316 Mass. 413, 419-420 (1944). *Benjamin Foster Co.* v. *Commonwealth,* 318 Mass. 190, 209 (1945). *G. L. Rugo & Sons* v. *Lexington,* 338 Mass. 746, 751 (1959). When contracting parties vest the power of decision over a potential point of contention in an individual possessing specialized knowledge or competence or someone in whom the contracting parties simply repose confidence, they make them quasi arbitrators "by whose judgment the parties agree in advance to be bound." *Benjamin Foster Co.* v. *Commonwealth, supra,* at 209. Substituting an extrinsic standard of necessity or even reasonableness would draw the controversy back into the judicial arena, from which the contracting parties presumably expected to exclude it. *Ibid.*

We are of opinion that the same criterion should apply to an attorney approval clause, i.e., the parties are bound by the attorney's decision unless it is shown to be arbitrary (infected

by fraud, bad faith, or dishonesty) instead of arbitral. This appears to represent the weight of authority. *Flower* v. *Coe,* 111 Neb. 296, 299 (1923). *Indoe* v. *Dwyer,* 176 N.J. Super. 594, 599-602 (1980). *McMahon* v. *Spitzer,* 29 Ohio App. 44, 50 (1928). *Smith* v. *McMillan,* 352 S.W.2d 871, 875-876 (Tex. Civ. App. 1961), aff'd in part and vacated in part, 363 S.W.2d 437 (Tex. 1962). See generally 5 Williston, Contracts § 675A (3d ed. 1961), and in vol. 7 of the same work, § 923 n.4 (3d ed. 1963). See also generally Annot., 15 A.L.R. 4th 761 (1982).

When obligations under an agreement are conditioned on the approval or satisfaction of a contracting party, it is appropriate, because of the self-interest of a party, to test the reasonableness of a declaration of disapproval or dissatisfaction on an objective basis. See *Salem Glass Co.* v. *Joseph Rugo, Inc.,* 343 Mass. 103, 106 (1961), and cases cited. See also 5 Williston, *supra,* § 675B. Although Mr. Duffy, the lawyer with the power of decision in this case, was in the employ of one of the parties, we are not prepared to assume that relationship vitiates a lawyer's capacity to render an honest judgment.

In the case before us, the sellers have not raised, by affidavit or otherwise, an issue about Mr. Duffy's motive or honesty in rejecting the title. See *A. John Cohen Ins. Agency, Inc.* v. *Middlesex Ins. Co.,* 8 Mass. App. Ct. 178, 183 (1979). Indeed, at oral argument, the seller's counsel conceded that Mr. Duffy had, at all times, acted in good faith. Accordingly, there was no dispute on this pivotal fact nor any other necessary to decide the case, and it was appropriate to grant summary judgment to the plaintiff. See *Community Natl. Bank* v. *Dawes,* 369 Mass. 550, 553 (1976).

Had it been necessary for Mr. Duffy to justify his position, he would have had no difficulty doing so. The inability freely to alienate real estate is not an inconsequential encumbrance. The restraint limits the convenience and speed with which the property so encumbered may be disposed of, leased, or financed and, thereby, may chill or thwart an advantageous transaction. Whether the restriction is enforceable is a question we need not, and do not, decide nor was it necessary for Mr. Duffy to

resolve that issue. The restriction is on the record and he had to take it into account. "It is not necessary that . . . [the buyer] should satisfy the court that the title was defective so that he ought to prevail at law; it is enough if it appear to be subject to adverse claims which are of such a nature as may reasonably be expected to expose the purchaser to controversy to maintain his title, or rights incident to it." *Jeffries* v. *Jeffries,* 117 Mass. 184, 187 (1875). *Guleserian* v. *Pilgrim Trust Co.,* 331 Mass. 431, 436 (1954). The buyer did not have to buy a law suit.

*Judgment affirmed.*