274 41 Mass. App. Ct. 274

G.M. Abodeely Insurance Agency, Inc. *v.* Commerce Insurance Co.

G.M. Abodeely Insurance Agency, Inc. *vs.* Commerce Insurance Company.

No. 94-P-1334.

Worcester. January 4, 1996. - September 11, 1996.

Present: Armstrong, Perretta, & Laurence, JJ.

*Agency,* Agent's contract, Termination. *Insurance,* Agent. *Contract,* Performance and breach, Construction of contract, Termination. *Practice, Civil,* Special verdict, Verdict.

In a civil action, the judge correctly ruled that the agency contract in question was not a contract terminable at will and correctly submitted to the jury whether the alleged failures of the agent were a material breach of the contract as could warrant the principal's termination of the agency pursuant to the applicable terms of the contract. [277-279]

In an action for breach of contract, the evidence was sufficient to warrant the judge's denial of the defendant's motions for a directed verdict, for judgment notwithstanding the verdict, and for a new trial. [280]

In a civil action, there was no inconsistency between the jury's answers to special questions and the jury's award of damages to the plaintiff for breach of contract. [280-281]

Civil action commenced in the Superior Court Department on July 27, 1990.

The case was tried before *Charles M. Grabau,* J.

*John P. Graceffa* for the defendant.

*William D. Jalkut* for the plaintiff.

Perretta, J. On November 10, 1989, the defendant, Commerce Insurance Company (Commerce), wrote to the plaintiff, G.M. Abodeely Insurance Agency, Inc. (Abodeely), advising it that its agency contract was cancelled, effective May 31, 1990.[1] The reason given for the cancellation was the

---

[1]General Laws c. 175, § 163, as amended through St. 1977, c. 910, provides, in pertinent part: "No company shall cancel the authority of any independent insurance agent for fire or casualty insurance, or both, if said agent is not an employee of said company . . . unless the company gives

"failure to report coverages bound in accordance with the agency agreement, and acceptance of business which does not conform to our underwriting criteria." Claiming that the stated basis for the cancellation was a pretext and that the true reason was Commerce's desire to eliminate Abodeely as a competitor of its wholly-owned subsidiary, Abodeely brought this action for breach of contract. On the basis of conflicting evidence on the issues of Abodeely's history of late reporting and accepting risks outside Commerce's underwriting criteria, the jury found that there had been no material breach of the agency contract and awarded damages to Abodeely. The principal issue on Commerce's appeal is whether it could cancel the agency contract "at will" or whether, as the jury was instructed, a material breach was required before Commerce could cancel the contract without liability. We affirm the judgment.

1. *The facts.* There is no dispute that the contract between Abodeely and Commerce required Abodeely to follow Commerce's underwriting rules and policies in soliciting business, binding Commerce, and issuing policies. The contract also required Abodeely to mail Commerce a "complete report of each binder . . . on the day of its execution and not later than its effective date."

There is also no dispute that on or about September 12, 1989, a binder was issued by Abodeely on property that was destroyed by a fire on October 4, 1989, in which two people died. The first notice given Commerce that it had been bound by Abodeely was on October 5, 1989, by telephone.

What was very much in dispute at trial was whether Abodeely's history of late reporting of binders was peculiar to it or a tolerated practice also engaged in by other agents of Commerce and whether the most recently destroyed property was, consistent with Commerce's underwriting guidelines, located "in a safe area, relatively free from crime . . . ."

Against the backdrop of the factual disputes to be resolved by the jury in determining whether Commerce's cancellation of the agency contract was in breach of its terms, we set out the pertinent paragraphs of Article VII, the termination provisions of the agency contract.

---

written notice of its intent to cancel such agent . . . at least one hundred and eighty days before the proposed effective date of any such cancellation . . . ."

"a. This Agreement is terminable:

(1) *Immediately* upon written notice by the Agent to the Company.

(2) *Immediately* and without prior notice to the Agent if any public authority suspends, revokes, or refuses to renew the Agent's license or certificate of authority.

(3) At the Company's option in the event of merger, sale, or transfer of the Agent's business, or upon formation or termination of any corporation or partnership by the Agent, unless the Agent promptly notifies the Company prior to such event and the Company consents in writing to the assignment of this Agreement.

(4) By either party *immediately* upon written notice to the other in the event of insolvency, bankruptcy, assignment for the benefit of creditors, abandonment, willful misconduct, fraud, abuse of authority, or failure to pay monies due after written demand therefore.

"b. It is the intention of both parties to this contract to make a genuine attempt to resolve *any differences* that may precipitate a termination of this Agreement. If such a solution is not found, then upon not less than 180 days' written notice by the Company to the Agent, the Agent's authority to solicit and issue policies increasing the Company's liability, exposure or risk shall cease as of the Termination Date." (Emphases added.)

The contract did not indicate that it was to be in effect for a specified period and did not have an expiration date; it was terminable only under the provisions of Article VII, set forth above.

Disagreement concerning the meaning of the contract was resolved by the trial judge on Abodeely's motion in limine seeking to preclude any mention or evidence of grounds for termination of the contract other than those set out in paragraph (a) which, as argued by Abodeely, was simply modified by paragraph (b). Commerce argued that the contract was terminable at will and that paragraph (b) gave it

rights to terminate in addition to those set out in paragraph (a).[2] Both readings of the contract were rejected by the judge who concluded that paragraph (b) controlled the procedures to be followed in respect to any material breach other than those that allowed for an immediate termination of the contract under paragraph (a). Consistent with his reading of the contract, the judge ruled that Commerce could introduce evidence at trial of a breach of contract or of a fiduciary duty by acts by Abodeely beyond those specified in paragraph (a). In response to special questions, the jury found that, although both parties had made a genuine effort to resolve their differences, there was no material breach of the contract by Abodeely.

2. *Termination of the contract.* When construing a contract, the following rules apply. "A contract is to be construed to give reasonable effect to each of its provisions. *McMahon* v. *Monarch Life Ins. Co.,* 345 Mass. 261, 264 (1962). '[E]very phrase and clause must be presumed to have been designedly employed, and must be given meaning and effect, whenever practicable, when construed with all the other phraseology contained in the instrument, which must be considered as a workable and harmonious means for carrying out and effectuating the intent of the parties.' *Charles I. Hosmer, Inc.* v. *Commonwealth,* 302 Mass. 495, 501 (1939)." *J. A. Sullivan Corp.* v. *Commonwealth,* 397 Mass. 789, 795 (1986).

As stated by the trial judge in his memorandum of decision: "A contract will not be deemed to be terminable at will merely because it contains no precise expiration date, if the contract delineates the circumstances in which the parties may cease to be obligated to perform it. *Kirkley* v. *F. H. Roberts Co.,* 268 Mass. 246, 252 (1929). *Revere* v. *Boston Copper Co.,* 15 Pick. 351, 361 (1834). Since Article VII specifies circumstances in which either or both of the parties could terminate the agreement, it is not terminable at will."

On appeal, Commerce argues that paragraph (b) allows it to terminate the contract on the basis of "*any* differences" between the parties that they were unable to resolve. A majority of the panel concludes, however, that mandatory participation in a negotiation process triggered by differences that could result in a termination of the contract is inconsistent

---

[2]Neither party argued that evidence extrinsic to the agreement was necessary to an interpretation of Article VII.

with an "at will" contract. As observed in *Fortune* v. *National Cash Register Co.*, 373 Mass. 96, 101 (1977), a contract that "reserve[s] to the parties an explicit power to terminate the contract without cause on written notice" is a "classic terminable at will employment contract." Such a reservation of power cannot be said reasonably to have been made here.[3]

From this conclusion, that Commerce could not terminate its relationship with Abodeely at will, the judge considered what circumstances or occurrences would excuse Commerce from any further obligation under the contract. Relying upon *Ward* v. *American Mut. Liab. Ins. Co.*, 15 Mass. App. Ct. 98, 100-101 (1983) ("It is well established that a material breach by one party excuses the other party from further performance under the contract"), the trial judge concluded that the only type of difference that "legitimately" could precipitate a termination of the agreement would be a material breach.[4] However, and as recognized by the trial judge, to read paragraph (b) as simply giving a right to cancel the contract for a material breach would be to render the provision mere surplusage: a material breach of the contract by one party would excuse the other from further performance irrespective of paragraph (b) and as matter of law. See also Restatement (Second) of Contracts § 237 (1981) ("[I]t is a condition of each party's remaining duties to render performances to be exchanged under an exchange of promises that there be no uncured material failure by the other party to render any such performance due at an earlier time").

This reasoning compelled the trial judge to conclude that to give paragraph (b) meaning and effect (see *J.A. Sullivan Corp.* v. *Commonwealth*, 397 Mass. at 795) it must be read as a *limitation* upon the right to be excused, as matter of law, from any further obligation under the contract on account of

---

[3]Justice Armstrong would read paragraphs (a)(2) and (a)(4) as a listing of reasons for termination that justify Commerce in dispensing with good faith discussions prior to sending its termination notice, and he would hold that paragraph (b) allows Commerce to terminate for any reason, subject to its obligation first to discuss with Abodeely in good faith a possible resolution of differences between them. Based upon that reading of the contract and the jury's determination that the parties did make a genuine attempt to resolve their differences, Justice Armstrong would reverse the judgment and enter judgment for Commerce.

[4]We construe the word "legitimately," as used by the trial judge, to mean "lawfully" or "without liability."

a material breach. Put another way, the trial judge determined that, in the event of a material breach *other* than those described in paragraph (a)(2) and (a)(4), which allow for immediate termination, paragraph (b) obligates the parties genuinely to attempt a resolution before exercising the right to refuse further performance.

Based upon his reading of Article VII, the trial judge correctly left it to the jury to decide whether, on the basis of the circumstances of the case, Abodeely's failures constituted a material breach of the contract under paragraph (b). See *Lander* v. *Samuel Heller Leather Co.*, 314 Mass. 592, 595-596 (1943); *Cetrone* v. *Paul Livoli, Inc.*, 337 Mass. 607, 610 (1958); *Boston Hous. Authy.* v. *Hemingway*, 363 Mass. 184, 200 (1973). Although a majority of the panel has concluded that Commerce did not have the right to terminate Abodeely at will, we do not think it necessary to determine whether the trial judge was correct in construing the disputed phrase, "any differences that may precipitate a termination of this Agreement," to mean a material breach other than one specified in paragraph (a)(2) and (a)(4).

Even if paragraph (b) were to be construed as giving Commerce the right to terminate the contract for less than a material breach by Abodeely, we would conclude that "any differences" cited by Commerce would have to be found to be, at the very least, objectively reasonable and honest. Cf. *Salem Glass Co.* v. *Joseph Rugo, Inc.*, 343 Mass. 103, 106 (1961); *Smith* v. *Allmon*, 17 Mass. App. Ct. 712, 715 (1984). Such a determination would also be one for the jury to make based upon the circumstances of the case. However, even were we to read Commerce's requests for jury instructions generously and conclude that they squarely asked the trial judge to put to the jury the issue of whether its reasons for terminating the contract were objectively reasonable and honest even if Abodeely was not in material breach of the contract, Commerce makes no complaint on appeal about the form of the special questions or the trial judge's refusal to give the requested instructions. Instead, Commerce relies solely on the argument that it has made from the outset, that it could terminate the contract at will. In these circumstances, it is unnecessary for us to go beyond the conclusion that Commerce's interpretation of the contract is erroneous. See *Dunbar* v. *Ferrera Bros. Inc.*, 306 Mass. 90, 92-93 (1940).

3. *The breach of the contract.* There is ample support in the record for the trial judge's determination that the evidence was sufficient to put to the jury the question of whether Abodeely's actions rose to the level of a material breach of the contract. Commerce's arguments, that it was entitled to a directed verdict, judgment notwithstanding the verdict, or a new trial, are premised upon its claim of an "at will" contract and erroneously rely almost exclusively upon the evidence favorable to its position[5] without taking into account that presented by Abodeely. See *McNamara* v. *Honeyman*, 406 Mass. 43, 45-46 (1989); *Foster* v. *The Loft, Inc.*, 26 Mass. App. Ct. 289, 292 (1988), and cases therein cited.

4. *Inconsistent verdicts.* Although Commerce argues that there is an inconsistency between the jury's general verdict (that Commerce was liable on Abodeely's action for breach of contract) and its answer to an interrogatory (that Commerce made a genuine attempt to resolve any differences with Abodeely), the record shows that the case was submitted to the jury with special questions rather than with written interrogatories accompanied by a general verdict form. Compare Mass.R.Civ.P. 49(a) with 49(b), 365 Mass. 813 (1974).

"Under rule 49 (a), the jurors return answers to each question or each issue submitted to them. The jurors do not return a general verdict. The answers to the questions or issues submitted are considered a special verdict consisting of 'a statement of facts the jury have found from which the judge determines the appropriate judgment.' *Commonwealth* v. *Licciardi*, 387 Mass. 670, 675 (1982). In determining whether there is an inconsistency in the jury's answers, the answers are to be viewed in the light of the attendant circumstances, including the pleadings, issues submitted, and the judge's instructions. If the jury's answers can be harmonized, they must be resolved so as to harmonize them." *Solimene* v. *B. Grauel & Co., KG*, 399 Mass. 790, 800 (1987) (citations omitted).

---

[5]Commerce makes a separate but somewhat related argument concerning the trial judge's exclusion of evidence which it claims would have shown the degree of the risk involved in insuring the property that was destroyed by fire. The argument warrants no discussion beyond that set out in Abodeely's brief.

In response to the four questions put to them,[6] the jury answered that Abodeely did not materially breach the contract, that Abodeely did not materially breach its fiduciary duty, that Abodeely did make a genuine attempt to resolve any differences with Commerce, and that Commerce did make a genuine attempt to resolve any differences with Abodeely. Commerce does not argue, nor could it, that there is an inconsistency in the jury's answers to these questions.

Even were we to construe Commerce's argument to be that the judgment awarding Abodeely damages for breach of contract was inconsistent with the jury's finding that Commerce had made a genuine attempt to resolve any differences with Abodeely, that contention would also fail. Neither paragraph (b) nor the law provides that a party's attempt to resolve any differences arising out of the performance of a contract excuses that party from further performance of its contractual obligations. As put to the jury, Commerce's cancellation of the contract could be excused only by Abodeely's material breach. The judgment against Commerce is, therefore, consistent with the jury's determination that Abodeely did not materially breach the contract.

*Judgment affirmed.*

---

[6]The fifth question pertained to the amount of any damages sustained by Abodeely as a result of the termination of the contract.