Connolly, J.
INTRODUCTION
The plaintiffs, General Mills Operations, Inc. (“General Mills”) and Shore Educational Collaborative (“Shore”), brought this action for declaratory judgment seeking a court interpretation of the Justin Place Condominium Master Deed (“Master Deed”), which would allow Shore to operate a school in Units 2 and 2A at The Justin Place Condominiums (“Justin Place”). The plaintiffs have now moved for summary judgment. The defendant has made a cross motion for summary judgment. For the following reasons, the plaintiffs’ motion for summary judgment is DENIED, and the defendant’s cross motion for summary judgment is ALLOWED.
BACKGROUND
Justin Place was formed pursuant to the provisions of G.L.c. 183A, by filing and recording a Master Deed that contains certain restrictions on the permissible uses of the units. Justin Place has three separate units (“Units”). The plaintiff, General Mills, the successor in interest to Pillsbury Company (“Pillsbury”), owns Units 2 and 2A. The defendant, Jeffrey Stanett (“Stanett”), owns Unit 1A and leases it to a company that manufactures cables.
The plaintiff, Shore, is an educational collaborative established pursuant to G.L.c. 40, §4E. Shore was formed by an agreement between the municipalities of Chelsea, Everett, Malden, Medford, Revere, Saugus and Winthrop. Its purpose is to conduct educational programs and services for students with mental, physical and emotional disabilities. Shore entered into a purchase and sale agreement with Pillsbury to Purchase Units 2 and 2A, intending to operate a school on the premises.
After Pillsbury entered into an agreement to sell the property to Shore, a dispute arose as to whether the provisions in Article VIII of the Master Deed allows the Units to be used as a school. Specifically, a dispute arose as to the interpretation of Article VIII, paragraph A (“Paragraph A”) and Article VIII, paragraph C (“Paragraph C”). The plaintiffs believe that the provisions in Paragraph A allow any service establishment to operate in the Units and that Paragraph C allows any use permitted by the Chelsea Zoning Ordinance.[2] The defendant states that the plaintiffs are misinterpreting Paragraph A, and that the service establishments that the paragraph allows must be commercial in nature. The defendant further contends that Paragraph C does not allow all uses under the Chelsea Zoning Ordinance, but rather, it restricts and defines the uses enumerated in Paragraph A to the extent allowed under the zoning laws.
DISCUSSION
Summary judgment will be granted where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. See Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and that it is entitled to judgment in its favor. See Pederson v. Time Inc., 404 Mass. 14, 16-17 (1989). “If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat the motion for summary judgment.” Pederson v. Time Inc., 404 Mass. at 17. The opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summary judgment. Lalond v. Eissner, 405 Mass. 207, 209 (1989).
In this matter,- all parties agree to the material facts as stated above. The issues that this court must then decide are: (1) whether Paragraph A of the Master Deed allows the Units to be used for school purposes; and, (2) whether paragraph C of the Master Deed allows the Units to be used for all purposes allowed by the City of Chelsea Zoning Ordinance. As these are questions of law, summary judgment is proper.
Service Establishments
Paragraph A states, in pertinent part: “The building and each of the Units are intended to be used solely for the maintenance of offices, commercial sales — or sevices [sic] establishments, wholesale and light manufacturing, and warehousing therein ...” The plaintiff in this matter urge the court to interpret “service establishments” to mean any form of establishment providing services, including a school. The defendant urges the court to read “commercial sales — or service establishment” to mean commercial sales or commercial services establishments.[3]
“A contract is to be construed to give reasonable effect to each of its provisions.” G.M. Abodeely Ins. Agency Inc. v. Commerce Ins. Co., 41 Mass.App.Ct. 274, 277 (1996) (citations omitted). “Every phrase or clause must be presumed to have been designedly employed, and must be given meaning and effect, wherever practicable, when construed with all the other phraseology contained in the instrument, which must be considered as workable and harmonious means for carrying out and effectuating the intent of the parties.” Id.
Both parties present plausible interpretation of the clause, however, when Paragraph A is read as a whole, the defendant’s interpretation is the more reasonable. “Service establishments” could describe many different endeavors. It could include food services, gasoline station services, daycare services or, as the plaintiff urges, educational services. It is unlikely that the drafter intended to restrict the use of the Units to *299 offices, commercial sales, wholesale, light manufacturing and warehousing, but allowed the Units to be used for a broad category of use such as service establishments. Rather, it seems more likely that the drafter intended to restrict the use of the unit to commercial sales and commercial services establishments.
Further supporting this reasoning is the manner in which the separate classes of permissible uses were set off from one another. Each permitted use was set off from the other by a comma, however, “commercial sales” was set off from “service establishments” by the disjunctive “or.” It seems unlikely that the drafter would use “or” instead of a comma to separate “service establishments” from “commercial sales” if they were intended to be separate categories of permissible use. This court therefore finds that the clause “commercial sales — or service establishments,” as appearing in paragraph A, requires the service establishments be commercial in nature. The proposed use by the school is not a commercial endeavor, and therefore not permitted under Paragraph A of the Master Deed.
Paragraph C
The Master Deed also has a provision, Paragraph C, that states “the building and each of the Units may be used for all purposes now or hereafter, from time to time, permitted by the City of Chelsea Zoning Ordinance ...” The plaintiffs urge the court to read this clause as permitting the Units to be used for all uses that the zoning ordinances allow. This reading would appear logical, if not for the seemingly contradictory language of Paragraph A. Paragraph A states that the uses it lists are the sole uses to which the units may be used. The defendant urges the court to read Paragraph C as restricting and defining the uses permitted by paragraph A, but granting no further allowance.
Where the word solely is used in a Master Deed, the word must be read as precluding other uses. See Woodvale Condominium Trust v. James Scheff, 27 Mass.App.Ct. 530, 535 (1989). In this case, however, Paragraph C appears to allow uses which directly conflict with the “sole” uses enumerated in Paragraph A. Because the contradictory and ambiguous language of Paragraphs A and C can support reasonable differences of opinion as to the meaning of the words employed, this court will look outside of the four corners of the Master Deed to determine the intended meaning of the provisions. See Suffolk Construction Company, Inc. v. Lanco Scaffolding Co., Inc., 47 Mass. App.Ct. 726, 729 (1999).
Stanett, submitted an affidavit stating that he was the first unit purchaser, and was involved in negotiating the terms of the Master Deed.[4] The affidavit states that, upon his urging, Paragraph C was placed into the Master Deed. The plaintiffs point to this admission as proof that Paragraph C was intended to be a part of the Master Deed, and therefore should be followed as it is written. The plaintiffs further point to the fact that the exact provision that appears in Paragraph C, also appears in Stanett’s Purchase and Sale Agreement for his individual unit. This argument, however, does not reconcile Paragraph C with Paragraph A. It instead provides support that Paragraph C should be utilized over Paragraph A.
Stanett’s affidavit, however, states that the reason he requested the language in Paragraph C was so the Master Deed would allow his industrial operations to extend as far as the zoning ordinance allowed for industrial uses. He states that when the Master Deed was drafted, the zoning ordinance allowed a certain amount of retail business associated with his planned industrial use. Stanett states that he wanted the Master Deed’s allowance for industrial use to mirror the zoning ordinance, and that Charles Hill, the owner of the property at the time the Master Deed was drafted, agreed. Neither party has submitted an affidavit from Mr. Hill.
The evidence that has been provided to the court supports the defendant’s position. The defendant’s position also reconciles the two paragraphs, where if the Master Deed were read as the plaintiff urges, Paragraph A would be rendered meaningless. The law requires a Master Deed to be read as a whole, and to avoid such wholesale abandonment of provisions. See G.M. Abodeely Ins. Agency Inc. v. Commerce Ins. Co., 41 Mass.App.Ct. at 277; Associated Credit Services, Inc. v. City of Worcester, 33 Mass.App.Ct. 92, 93-94 (1992). Therefore, this court finds that Paragraph C is a limiting paragraph, meant to restrict and define the uses permitted under Paragraph A. Paragraph C does not create any further uses not enumerated in Paragraph A.
ORDER
For the reasons stated, it is hereby ORDERED that the plaintiffs’ motion to strike the affidavit of Jeffrey Stanett is DENIED. It is Further ORDERED that plaintiffs’ motion for summary judgment is DENIED and the defendant, Jeffrey Stanett’s cross-motion for summary judgment is ALLOWED.

 There is a dispute as to whether the Chelsea Zoning Ordinance would allow the school, however, because the court finds that the Master Deed does not permit use of the Units to the extent allowed under the zoning ordinances, this matter is now moot.

 Interpretation of this clause is further impeded by the presence of a stray hyphen, which neither party can account for. However, it appears to the court that the hyphen is merely a way of connecting the two ideas (though not grammatically correct). The American Heritage Dictionary (second college ed.) defines a hyphen as “a punctuation mark used to connect the parts of a compound word or between syllables of a word, esp. of a word divided at the end of a line." (emphasis added). *300 A review of the Amended Master Deed shows that the word “sales" is the last word on the line, and the words “or services establishments” begin the next line. Therefore, it appears that the hyphen is meant to connect the two ideas. This reasoning is further bolstered by the fact that the same clause in the unamended Master Deed contains no hyphen. See Complaint, exhibit A.

 The plaintiff has moved to strike Stanett’s affidavit; this motion is denied.