Hely, J.
A.Introduction
The parties entered a purchase and sale agreement for some retail properties in Freeport, Maine. The selling price was $12,750,000. Within the thirty-day due diligence period, the defendant buyer sent a written notice to the plaintiff seller that he was terminating the agreement. The written notice did not fully comply with the termination provisions of the contract because it did not identify any condition that was unsatisfactory to the buyer. This deprived the seller of the opportunity to attempt to cure an unsatisfactory condition.
The plaintiff seller is entitled to a partial summary judgment ruling that the parties formed a binding contract when they signed the purchase and sale agreement. The buyer, however, is entitled to a partial summary judgment ruling that the seller’s maximum damages amount is $100,000, plus interest. This was the only deposit amount that was due at the time of the alleged breach. Genuine issues of material fact remain on whether the buyer’s failure to identify any unsatisfactory condition caused any harm or damages to the seller.
B.Existence of a Contract
There is no merit to the buyer’s arguments that no contract was formed despite his signature on the Purchase and Sale Agreement. The terms of the contract do not make delivery of an executed copy of the contract a condition precedent to the formation of the contract. Delivery of a deed may be necessary to convey title to land, but delivery of an executed written contract to the other party is not necessary for the formation of a contract. Hunt v. Rice, 25 Mass.App.Ct. 622, 630-32 (1988).
The buyer’s no-delivery argument “fudge [s] the distinction between the contract. . . and the memorandum required to prove what the contract is.” Hunt v. Rice, supra, 25 Mass.App.Ct. at 631-32. The no-delivery argument here, as in Hunt, “side-steps the evidentiary purpose of the Statute of Frauds.” Id. The Statute of Frauds “presupposes the existence of a contract.” To prove what the terms of the contract are, “it is not necessary that the revealing writing make its way into the hands” of either the claiming party or, in this case, the defending party. Id. What is necessary for enforcement under the Statute of Frauds, but not necessary for the formation of a contract, is a written memorandum of the contract that is “signed by the party to be charged.” G.L.c. 259, §1; Hunt v. Rice, supra.
The buyer’s “draft agreement” argument ignores the whole point of the carefully negotiated Purchase and Sale Agreement. The argument ignores the title of the document. The argument ignores the language that “[t]his instrument, which may be executed in multiple counterparts is to be construed as a Massachusetts contract,... sets forth the entire contract between the parties, [and] is binding upon and inures to the benefit of the parties hereto . . .” Par. 32(g).
“By signing the writing the parties bind themselves to such interpretation as the court may place upon the words and symbols employed by them.” Benjamin Foster Co. v. Commonwealth, 318 Mass. 190, 196 (1945). This Purchase and Sale agreement, signed by all parties, is no less enforceable than the “legally binding” offer to purchase that created a contract in McCarthy v. Tobin, 429 Mass. 84, 87 (1999). There is no basis from which a fair-minded jury could find otherwise. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); see Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
The payment of the first deposit was likewise not a condition precedent to the formation of the contract. See Massachusetts Municipal Wholesale Electric Co. v. Danvers, 411 Mass. 39, 45-46 (1991). There is no express language in the Purchase and Sale Agreement making the deposit a condition precedent to the formation of a contract. The language quoted earlier (“Massachusetts contract,” “entire contract,” and “binding upon . . . the parties hereto”) directly contradicts this argument. The timely payment of the first deposit was a performance obligation owed by the buyer, not the seller. Once he signed the contract, the buyer could not defeat its formation simply by dillydallying on his obligation to make the deposit. The buyer’s deposit delay and the seller’s forbearance did not prevent the formation of the contract. See Jerimiah Sullivan & Sons, Inc. v. Kay-Locke, Inc., 17 Mass.App.Ct. 997, 998 (1984) (building contract’s acknowledgment that the owner had paid the general contractor did not make the owner’s payment a condition precedent to general contractor’s obligation to pay the subcontractor). The “clarify of language [establishing a condition precedent] is missing in this contract.” Id.
The buyer also argues that there was no contract because the escrow documents were not fully executed or delivered. This too lacks any merit. The escrow documents were to be part of the agreed-upon process for handling the deposit. It was the buyer who thwarted the escrow process by failing to make the first deposit. The contract language did not make the escrow documents a condition precedent to the formation of the contract.
C.The Deficiency in the Termination Notice and the Issue of Harm to the Seller
Under Paragraph 25, the buyer had the right to terminate the contract during the Due Diligence Period if he was not “satisfied with the condition of the Properties in all respects . . .” The contract, Par. 25, imposed three requirements on the buyer in order for him to exercise his right to terminate: (1) the buyer’s notice of termination must be received by the seller on or before the expiration of the Due Diligence Period; *435 (2) the notice of termination must be in writing: and (3) the written notice “shall” include “a list of those conditions which Buyer deems to be unsatisfactory” and copies of any reports received by the buyer evidencing the unsatisfactory conditions. Paragraph 25 refers to this notice as the “Buyer’s Due Diligence Notice.”
The buyer satisfied the first two requirements. He sent a written notice of termination on October 2, 2002. There is no dispute that the seller’s attorney received the written notice before October 10, the last day of the Due Diligence Period.
The buyer failed to satisfy the third requirement for termination. His October 2, 2002, letter contained no statement or report of any unsatisfactory conditions. The letter stated that “(a]s a review of our due diligence, we have decided at this time the properly at this time is not something we wish to go forward with.” The termination letter added, that for “various reasons our due diligence indicates that we should pass on this real estate at this time.”
A genuine issue of material fact remains on whether the buyer’s failure to identify, in writing the unsatisfactory conditions caused any harm to the seller. The purpose of the Paragraph 25 requirement of written notice of unsatisfactory conditions was to give the seller an opportunity “to use reasonable efforts to cure” the unsatisfactory conditions within an extended closing date period. See Smith v. Allmon, 17 Mass.App.Ct. 712, 715 (1984): Loitherstein v. International Business Machines Corp., 11 Mass.App.Ct. 91; 94-96 (1980); Milona Corp. v. Piece O’ Pizza of America, Corp., 1 Mass.App.Ct. 839, 840 (1973).
Under Paragraph 25, the seller had the option to elect whether or not to attempt to cure the unsatisfactory conditions. Paragraph 25 provides that if the seller does not elect to cure the unsatisfactory conditions then the buyer’s Due Diligence Notice “shall operate to terminate this Agreement . . ." Paragraph 25 further provides that if the seller elects to not cure the unsatisfactory conditions, “Buyer’s sole recourse shall be the return of the deposit paid by Buyer and this Agreement shall terminate without further recourse to either party.” In other words, if the seller had received a written notice of unsatisfactory conditions and had elected to not cure them, the seller would have had no right to retain or recover the $100,000 first deposit amount.
The Due Diligence and termination provisions in Paragraph 25 are quite liberal toward the buyer in terms of what conditions might qualify as “Unsatisfactory Conditions.” Paragraph 25 provided that the buyer had until the end of the thirty-day Due Diligence Period to determine if he was “satisfied with the condition of the Properties in all respects including, but not limited, with respect to: (i) title, survey and environmental matters, (ii) the physical and operating condition of the Properties, (iii) the terms of outstanding leases and tenancies and (iv) the terms of documents evidencing the Holden Mortgage Loan, as more particularly referenced in Paragraph 26 below” (emphasis added). If the buyer was unsatisfied in any respect with the condition of the property, all he had to do was to identify the unsatisfactory condition in his written termination notice, include a copy of any unsatisfactory condition report, and make sure that the seller received the written notice by October 10.
The buyer now contends in his affidavit that in addition to his October 2 termination letter he called the Palm Beach telephone number of Gerald Fineberg, the seller’s authorized agent, on the morning of October 2. The buyer’s affidavit states that he left a voicemail message for Mr. Fineberg stating that he did not desire to purchase the property and “that the Properties were not satisfactoiy to me due to the configuration and access problems.” The buyer’s affidavit states that he learned from the due diligence investigation by his agents that “the second floor space did not have separate external access for each of the store spaces but instead was accessed by a single internal stairwell.” The buyer’s affidavit does not state whether he got this specific about the unsatisfactory conditions in his voicemail to the seller’s agent.
Mr. Fineberg’s permanent home is in Boston. Taken together, his affidavit and supplemental affidavit state that he went to Florida on October 28 and that he was there in December. Mr. Fineberg recalls hearing a message in which the buyer called and apologized for the deal not closing. Mr. Fineberg does not recall any other specifics of the message. He also does not recall whether he heard this message in late October or in December.
The summary judgment evidence must be taken in the light most favorable to the opposing party with credibility determinations reserved for a trial. O’Sullivan v. Shaw, 431 Mass. 201, 203 (2000). Assuming the truth of the buyer’s affidavit, he was unsatisfied on October 2 with the condition of the properties in that the second-floor store spaces did not each have a separate external stairwell. If this had been expressed in a timely written notice, it would readily qualify under Paragraph 25 as within the broad categories of physical conditions that the buyer could identify as unsatisfactory.
In order to retain or recover the $100,000 liquidated damages amount, the seller must show that the buyer’s failure to state the unsatisfactory condition harmed or damaged the seller in some way. If the buyer’s written due diligence notice had identified the second-floor access as an unsatisfactory condition, it is unclear whether the seller would have tried to cure the condition. The seller may have chosen to not tackle such a structural problem. If the condition was such that the seller would not have tried to cure it, it is unclear how the seller was harmed by the incompleteness of the termination notice. While the seller may *436 not have to show a material breach of the contract, it must at least show that the notice’s failure to identify an unsatisfactory condition caused it some harm. These are genuine issues of material fact that are left unresolved by the summaiy judgment materials.
D.Liquidated Damages and the Two Deposits
The contract, Par. 5, required two deposits from the buyer. The first deposit, $100,000, was to be paid upon execution of the Purchase and Sale Agreement. A second deposit in the amount of $150,000 was to be paid “no later than the last business day of the ‘Due Diligence Period,’ as defined in Paragraph 25, below.” The seller contends that it is entitled both deposits as its liquidated damages for the buyer’s breach.
The contract, Par. 17, treats “any deposit due hereunder” as “liquidated damages.”[1] The seller claims that it is entitled to both deposits as a result of the buyer’s breach. The seller’s claim for the second deposit is refuted by the contract because the second deposit was not yet due on the date when the buyer terminated the contract.
The second deposit was not due until the last business day of the Due Diligence Period. The Due Diligence Period is defined in Paragraph 25(a) as follows: “Buyer shall have until the thirtieth day following the date of this Agreement to confirm that, as of the date of this Agreement, Buyer is satisfied with the condition of the Properties in all respects . . .” The agreement date is September 10, 2002, the date filled in by hand on page one of the contract. The Due Diligence Period thus lasted until October 10, 2002. The buyer terminated the contract on October 2,2002, by letter to the seller’s attorney on that day. If this termination by the buyer was a breach of the contract, it occurred before the second deposit was “due” under Paragraphs 5 and 17. Under Paragraph 17, the seller’s maximum damages amount is therefore the $100,000 amount of the first deposit, plus interest from September 10, 2002, the due date for the first deposit.[2]
E.Motions to Strike and Evidence Issues
The court has considered all the affidavits, supplemental affidavits and other summaiy judgment materials submitted by the parties. The court has not, however, considered the parts of the affidavits that are not based on personal knowledge except where the fact is undisputed or where the affiant is relying on admissible business records or a document or other admission received from the opposing parly.
The October 4, 2002, letter from Attorney Goldberg for the seller to Attorney Johnson for the buyer includes an offer of compromise in the form of the buyer paying the seller’s legal costs. This offer of compromise was not a waiver of any of the seller’s rights if the offer was not accepted. The offer was not accepted. This offer of compromise and the affidavit references to it are inadmissible on summaiy judgment at trial.
F.Order
The court makes the following partial summaiy judgment rulings:
(1) The defendant entered into and formed abinding contract with the plaintiffs. The terms of the contract are as stated in the Purchase and Sale Agreement dated September 10, 2002.
(2) If the plaintiffs prove a breach of the contract and that they have been harmed by the breach of contract, the maximum damages that they may recover is $100,000, the amount of the first deposit required under the contract, plus interest on that amount from the date of September 10, 2002.
(3) The reference to possible payment of the seller’s legal costs in Attorney Goldberg’s October 4, 2002 letter is an offer of compromise. It is inadmissible as evidence at trial.
The plaintiffs’ motion for summaiy judgment is otherwise denied.

“17. Default; Damages: If Buyer shall fail to fulfill its agreements herein, any deposit due hereunder by Buyer, plus interest, if any, earned thereon, shall be retained by Seller as liquidated damages (the “Liquidated Damages”) and shall be Seller’s sole and exclusive remedy at law or in equity.”

Massachusetts law on liquidated damages is summarized in Kelly v. Marx, 428 Mass. 877, 880 (1999).